**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Reynaldo VILLA, Defendant–Appellant.**

**No. 06CA1857.**

Colorado Court of Appeals, Div. V.

Oct. 1, 2009.

 

 

 

 

John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Reynaldo Villa, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child. He also appeals the sentence imposed. We affirm the judgment of conviction, vacate the sentence, and remand for resentencing.

At the time of the alleged assault in this case, the victim, A.C., was three years old. The trial court ruled that A.C. was incompetent to testify at trial, but allowed several witnesses to testify as to A.C.'s out-of-court statements.

A.C.'s great-grandmother (Anita) testified that A.C. was staying at her house on December 17, 2004. At the time, defendant, whom A.C. referred to as "Uncle Ray," was living in the basement of Anita's house. At some point during that evening, A.C. had wandered off and Anita looked for her. She eventually discovered A.C. walking up the stairs from the basement. A.C.'s pants and underpants were down; she was holding her buttocks and genital area; she appeared frightened; and she told Anita, "My uncle Ray was getting my booty."

Anita's grandson (Alex) testified that, when he arrived at Anita's house on that same night, A.C. appeared scared and was crying and her underpants were pulled down to her knees. When Alex asked A.C. what was wrong, she responded, "Uncle Ray touched my booty." Upon hearing this, Alex went downstairs to confront defendant. He found defendant intoxicated and lying naked on his bed with a string tied around his penis (shown at trial to be for the purpose of sexual enhancement). When Alex asked him what was going on, defendant struck him with a cane. The police were called, and when they arrived, they found defendant swaying back and forth on the porch shouting, "I didn't do it."

A.C.'s mother testified that when she arrived at Anita's house after the incident, A.C. "looked kind of scared, her eyes [were] open real wide, she had her head down, she was crying a little bit." When A.C.'s mother asked A.C. what had happened, A.C. told her that she "was downstairs getting [her] toy,

and [defendant] grabbed [her] and pulled [her] in the room and he was touching [her] booty in the front and booty in the back with his finger and it hurt." A.C.'s mother explained that A.C. uses the term "booty" to describe both her anus, including her buttocks, and her vagina. A.C. told her mother that defendant pulled her underpants down "to the side" and "tried to unbutton [her] shirt."

The police officer who arrived at the scene testified that A.C. told him that defendant "touched [her] down there," pointing to her "bottom" and her vaginal area, and that it hurt. He stated that A.C. spoke to him on her own, without any assistance, guidance, or prompting from adults.

The emergency physician who interviewed A.C. on the night of the incident testified that A.C. told him that she was cornered in a room with defendant and that he "touched her booty," pointing to her vagina. A.C. then told the physician that she ran out of the room, found other family members, and told them what had happened.

The supervising pediatric physician who examined A.C. after the incident testified that A.C. told him that defendant had touched her genital area. His physical examination indicated that "the tissues behind the labia [inside the vaginal opening] were slightly more red than one would normally see in that area." The physician explained that the redness could be consistent with lack of hygiene, physical injury, or "someone rubbing [the area] with a finger." There was evidence that it was not unusual not to see evidence of physical trauma or penetration in "a case involving fondling."

The first trial resulted in a hung jury and a mistrial. Before the second trial, the trial court permitted the prosecution to introduce evidence, pursuant to section 16–10–301, C.R.S.2009, and CRE 404(b), of defendant's prior sexual assaults on his nephew, D.C., who lived with Anita from birth until he was ten years old.

At the second trial, D.C. testified that when he lived with Anita, defendant also lived with her in a trailer behind her house. He stated that, beginning when he was six years old and continuing until he was ten years old, defendant would anally rape him three to four times a week in the trailer behind Anita's house after he had returned home from school. Specifically, D.C. testified that when he would arrive at the trailer, defendant would be on his bed, wearing only boxers; defendant would tell D.C. to come over to the bed and then bring D.C. to the bed by "taking [him] by the waist"; when D.C. was on the bed, defendant would take D.C.'s clothes off and touch him "around [his] penis" with his hands; defendant would be on his back and D.C. would be on top of him so that D.C.'s back was on defendant's chest; and defendant would then "stick his penis in [D.C.'s] ass" and move "up and down." D.C. stated that when he did not go to the bed willingly, defendant would "use force" by "being rough" and throwing him on the bed. During those times, D.C. would be lying on his stomach and defendant would be on top of him.

Following defendant's conviction, the trial court sentenced him pursuant to the Colorado Sex Offender Lifetime Supervision Act, sections 18–1.3–1001 to –1012, C.R.S.2009, to an indeterminate sentence of fifteen years to life in the custody of the Department of Corrections.

### I. Prior Act Evidence

Defendant first contends that the trial court erred by admitting evidence of his prior acts of sexual assault against D.C. pursuant to section 16–10–301 and CRE 404(b). We disagree.

The trial court has considerable discretion in determining the admissibility of evidence, and its rulings will not be disturbed unless they were manifestly arbitrary, unreasonable, or unfair. *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002); *People v. Apodaca*, 58 P.3d 1126, 1128 (Colo.App.2002). In reviewing the admission of such evidence, we assume the maximum probative value a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected from its introduction. *Rath*, 44 P.3d at 1043.

The General Assembly has declared that sexual offenses are "a matter of grave statewide concern" and has stated that evidence of other sexual acts is "typically relevant and highly probative" and should therefore be more readily available in sexual assault cases. § 16–10–301(1), C.R.S.2009; *People v. Larson,* 97 P.3d 246, 249 (Colo.App.2004); *Apodaca,* 58 P.3d at 1128.

The statutory provision preserves the rule that evidence of similar sexual acts by the defendant is not admissible to prove propensity, but is admissible for

> any purpose other than propensity, including: Refuting defenses, such as consent or recent fabrication; showing a common plan, scheme, design, or modus operandi, regardless of whether identity is at issue and regardless of whether the charged offense has a close nexus as part of a unified transaction to the other act; showing motive, opportunity, intent, preparation, including grooming of a victim, knowledge, identity, or absence of mistake or accident; or for any other matter for which it is relevant.

§ 16–10–301(3), C.R.S.2009; *see also* CRE 404(b); *People v. Underwood,* 53 P.3d 765, 769 (Colo.App.2002); *People v. Wallen,* 996 P.2d 182, 185 (Colo.App.1999).

■ Before the court admits evidence of other crimes, wrongs, or acts, the other act evidence must satisfy CRE 404(b) and the test in *People v. Spoto,* 795 P.2d 1314 (Colo. 1990). The court must assure that (1) the prior act relates to a material fact; (2) it is logically relevant in that it makes the existence of a material fact more or less probable than it would be without the evidence; (3) its logical relevance is independent of the prohibited intermediate inference that the defendant has a bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Rath,* 44 P.3d at 1038; *Spoto,* 795 P.2d at 1318.

■ The trial court must also consider the strength of the evidence proving the commission of the other act, the similarities between the acts, the interval of time between the acts, the need for the evidence, and the degree to which the evidence will inflame the hostility of the jury. *Adrian v. People,* 770 P.2d 1243, 1246 (Colo.1989); *People v. Janes,* 942 P.2d 1331, 1336 (Colo.App.1997).

Here, the prosecution filed a pretrial notice of its intent to introduce, under section 16–10–301 and CRE 404(b), other act evidence that defendant sexually assaulted D.C. The prosecution maintained that the underlying facts of the prior incidents were similar to those supporting the charge in the current case and that such evidence showed defendant's intent. Specifically, the prosecutor asserted,

> [There is] going to be discussion in the jury room about whether [the] contact [in this case] could have been incidental. I have to prove beyond a reasonable doubt this occurred, over the clothes contact; if it was for sexual assault purposes, essentially. There is no stronger evidence on this planet, obviously, than of what was in [defendant's] mind, what his intentions were, than this evidence as related to [D.C.].

Over defendant's objection, the trial court granted the prosecution's motion to admit D.C.'s testimony regarding the assaults to show defendant's intent:

> I do agree that there is some necessity and highly productive information to be gained by talking about the fact there was sexual contact. I can't prevent the People, in my view, from going at least that far, because that's the intent. That's the whole point to disprove merely unintentional touching.

Because defendant was charged with sexual assault on a child, the prosecution was required to prove that

> 1. The defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. knowingly
>
> a. subjected another, not his or her spouse,
>
> b. to any sexual contact, and
>
> 4. that person was less than fifteen years of age, and
>
> 5. the defendant was at least four years older than that person,

6. at the time of the commission of the act.

*See* § 18–3–405, C.R.S.2009.

As relevant here, sexual contact is defined as the knowing touching of the victim's intimate parts or the knowing touching of the clothing covering the victim's intimate parts if that sexual contact was for the purposes of sexual arousal, gratification, or abuse. § 18–3–401(4), C.R.S.2009.

In a criminal case, the prosecution must prove each element of an offense beyond a reasonable doubt. *Jolly v. People,* 742 P.2d 891, 896 (Colo.1987). The prosecution has a right to prove each of these elements unless the defendant stipulates to facts establishing one or more elements and the prosecution's case is not weakened by acceptance of such a stipulation, with the consequent loss of the legitimate moral effect of its evidence. *Martin v. People,* 738 P.2d 789, 794 (Colo.1987). Defendant did not stipulate that he committed the assault, much less that he committed it for the purpose of sexual arousal, gratification, or abuse. Intent was therefore a material element that the prosecution had a right to prove. Despite the fact that the alleged conduct constituting the assault is highly suggestive of a purpose of sexual arousal, gratification, or abuse, the element of intent was distinct from, and in addition to, the conduct and was a material fact essential to the prosecution's case. The first prong of the *Spoto* analysis, then, was satisfied. *Spoto,* 795 P.2d at 1318.

We reject defendant's contention that D.C.'s allegations were not logically relevant to the issue of intent because his defense was that he did not touch A.C. and, therefore, "if he did touch her as she claimed, then whether it was sexual contact was not an issue [because] he did not claim that he innocently or accidently touched her." However, defendant's wholesale denial did not lessen the proof required by the prosecution. Because defendant denied the contact altogether, the prosecution was required to prove that defendant committed the assault and that he committed it for the purpose of sexual arousal, gratification, or abuse.

The evidence of the prior acts of sexual assault against D.C. also satisfied the second prong of the *Spoto* analysis. The evidence was logically relevant to the element of defendant's intent that he committed the assault for the purpose of sexual arousal, gratification, or abuse. Although "it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed," *People v. McKibben,* 862 P.2d 991, 993 (Colo.App.1993), the record before us establishes similarity of defendant's sexual misconduct. D.C. and A.C. are both relatives of defendant and they were sexually assaulted by defendant when they were under the age of ten. The assaults occurred within defendant's home in or around his bedroom. In addition, the type of sexual contact perpetrated by defendant was similar in each case in that defendant would begin by removing the victims' pants and underpants and then fondle them. Specifically, defendant would remove D.C.'s pants and underpants and then anally rape him. Here, the evidence demonstrates that A.C.'s underpants were pulled down after she had been in defendant's bedroom; that defendant had touched her buttocks and vagina; and that she had escaped from defendant's room soon thereafter. There was also evidence that after the incident with A.C., defendant was lying naked on his bed with a string tied around his penis, which suggests that defendant desired to have sexual contact for his own gratification or arousal, or abuse of the victim.

We note that, because defendant disputed A.C.'s allegations, the other acts evidence was also relevant to identify defendant as the perpetrator of the present offense, *see Rath,* 44 P.3d at 1040, and to rebut the suggestion, implicit in defendant's theory of defense, that A.C. fabricated her allegations. *See People v. Orozco,* 210 P.3d 472, 477–78 (Colo.App.2009); *People v. Victorian,* 165 P.3d 890, 893 (Colo.App.2007).

The third requirement of the *Spoto* analysis was also met. The logical relevance of the similar transaction evidence was independent of the inference that defendant acted in conformity with bad character.

Although "almost by definition, similar transaction evidence will suggest bad character and action in conformity therewith," the third prong of the *Spoto* test "does not demand the absence of the inference but merely requires that the proffered evidence be logically relevant independent of that inference." *People v. Snyder,* 874 P.2d 1076, 1080 (Colo.1994); *see Spoto,* 795 P.2d at 1318. The probability that defendant acted with the requisite intent was increased by the evidence of the assaults on D.C. independent of the inference of conformity with bad character.

■ The crucial inquiry in this case concerns, as it will in most cases, the fourth prong of the *Spoto* analysis, that is, whether the probative value of the similar transaction evidence was substantially outweighed by the danger of unfair prejudice. *See Spoto,* 795 P.2d at 1318. Here, the evidence that defendant had assaulted D.C. was highly probative of defendant's intent. The similarities between the assaults on D.C. and the assault on A.C. lessened the danger of unfair prejudice to defendant. Additionally, before D.C. testified, the court gave an appropriate limiting instruction that the jury was to consider the evidence only to show defendant's "common plan, scheme, design, identity, motive, guilt [sic], knowledge or intent." Again, at the conclusion of the evidence, the trial court gave the following jury instruction:

> Certain evidence of acts or transactions in this case was admitted for the limited purpose of showing Defendant's common plan, scheme, design, identity, motive, guilty knowledge, or intent. Such evidence in this case includes the evidence related to the acts alleged to have involved [D.C.]. At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted. You are again instructed that you must not consider it for any purpose other than the limited purpose for which it was admitted. For that limited purpose you may give it such weight as you think it is entitled. The defendant cannot be tried or convicted of any act not charged in the information itself.

■ Absent evidence to the contrary, we assume the jury heeded the court's instructions. *People v. Ellsworth,* 15 P.3d 1111, 1115 (Colo.App.2000); *People v. Herr,* 868 P.2d 1121, 1125 (Colo.App.1993).

Finally, enactment of section 16–10–301 itself "reflects a policy judgment that in sexual assault cases a need arises to make similar transactions evidence more readily available." *Adrian,* 770 P.2d at 1245 n. 2. According the challenged evidence its maximum probative value and its minimum unfair prejudicial effect, we cannot conclude that the trial court abused its discretion in admitting this evidence. Because sexual assaults "usually occur under circumstances in which there are no witnesses except for the accused and the victim," there is "a greater need" to admit evidence of a defendant's other sexual acts, and "normally the probative value of such evidence will outweigh any danger of unfair prejudice." § 16–10–301(1); *see also Rath,* 44 P.3d at 1043 ("where disputed testimony of the victim is the only direct evidence of the commission of the guilty act, additional evidence that is probative of that fact may have particular 'marginal' or 'incremental' probative value").

Accordingly, we hold that the trial court did not err in admitting evidence of defendant's prior sexual assaults on D.C.

## II. The Rape Shield Statute

Defendant next contends that the trial court erred by excluding evidence under Colorado's rape shield statute, section 18–3–407, C.R.S.2009, and limiting his examination of D.C. concerning his sexual assaults by another male relative, other than defendant. We disagree

### A. Constitutionality of the Rape Shield Statute

We first address, and reject, defendant's contention that the rape shield statute violates his rights to due process and equal protection under the law.

■ We review the constitutionality of statutes de novo. *Hinojos–Mendoza v. People,* 169 P.3d 662, 668 (Colo.2007). Statutes are presumed to be constitutional. The par-

ty attacking a statute bears the burden of showing it is unconstitutional beyond a reasonable doubt. *People v. Whitman*, 205 P.3d 371, 381 (Colo.App.2007).

Colorado's rape shield statute, section 18–3–407, provides that, except in certain instances not pertinent here, in rape and sexual assault cases, evidence of the victim's or a witness's prior or subsequent sexual conduct is presumed to be irrelevant. The statute further prescribes a pretrial screening procedure, much like the in camera hearing conducted on a motion in limine, to review proposed evidence on such matters for relevancy before it can be presented publicly at the trial. *See People v. McKenna*, 196 Colo. 367, 370, 585 P.2d 275, 276 (1978).

▇▇▇ To the extent defendant argues that the statute violates a defendant's right to fully confront and cross-examine an accuser, we disagree. In *McKenna*, the Colorado Supreme Court held that the rape shield statute does not deny defendants their due process rights of confrontation because the statute permits evidence of the victim's sexual history to be admitted on a preliminary showing of relevance and because there is no constitutional right to introduce irrelevant and highly inflammatory evidence. *Id.* at 374, 585 P.2d at 279; *see also People v. Gholston*, 26 P.3d 1, 8 (Colo.App.2000). On the basis of *McKenna*, we find defendant's due process right of confrontation arguments to be unavailing.

▇▇▇ Defendant also argues that the rape shield statute denies the equal protection of the law because it restricts a defendant's freedom to introduce evidence with no similar restriction upon the prosecution. *Compare* § 18–3–407 *with* § 16–10–301. No Colorado appellate court has addressed the issue of whether the statute violates equal protection rights.

▇▇▇ When a statute does not involve a suspect classification, such as one based on race, and does not involve fundamental constitutional rights, it is not unconstitutional unless there is no rational basis for the classification it creates, or the classification has no reasonable relationship to legitimate governmental objectives. *People v. Turley*, 18 P.3d 802, 804 (Colo.App.2000).

▇▇▇ Defendants in sexual assault cases are not within a suspect classification and, therefore, the Equal Protection Clause requires only that there be a rational and reasonable basis for the classification and that it bear a fair relationship to the purpose of the statute. *See id.* As the Colorado Supreme Court explained in *McKenna*:

> The basic purpose of section 18–3–407, therefore, is one of public policy: to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case. The statute represents one means chosen by the general assembly to overcome the reluctance of victims of sex crimes to report them for prosecution. Thus it reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders.

*McKenna*, 196 Colo. at 371–72, 585 P.2d at 278; *accord People v. MacLeod*, 176 P.3d 75, 79 (Colo.2008).

Defendant has not proved beyond a reasonable doubt that no rational relationship to a legitimate legislative purpose or governmental objective exists for the General Assembly's decision to declare evidence of a victim's or witness's sexual history presumptively irrelevant, and to create the offer-of-proof procedure that must be followed to rebut the presumption and to introduce evidence of a victim's sexual history at trial. *See MacLeod*, 176 P.3d at 80. Nor has defendant shown that this decision was unreasonable, arbitrary, or capricious. He merely argues that "the legislature's standards for the relevance of evidence of other sexual acts of a sexual assault defendant and those of a sexual assault accuser are blatantly inconsistent and fundamentally unfair."

To the contrary, we conclude that section 18–3–407 is a rational attempt by the legislature to protect the complainant from harassment and humiliation and to encourage victims of sexual assaults to report crimes unhindered by the fear of having their past sexual activities made public. *See McKenna*, 196 Colo. at 371–72, 585 P.2d at 278. Accordingly, we conclude that section 18–3–407 does not violate a defendant's right to equal protection and due process of law. We also note that other jurisdictions have held that rape shield statutes similar to section 18–3–407 are constitutional and do not violate equal protection rights. *See Young v. State*, 429 So.2d 1162, 1164 (Ala.Crim.App. 1983); *Dorn v. State*, 267 Ark. 365, 590 S.W.2d 297, 299 (1979); *People v. Requena*, 105 Ill.App.3d 831, 61 Ill.Dec. 636, 435 N.E.2d 125, 128 (1982); *Cherry v. State*, 275 Ind. 14, 414 N.E.2d 301, 306 (1981); *Finney v. State*, 179 Ind.App. 316, 385 N.E.2d 477, 480 (1979).

### B. Application

We now address, and reject, defendant's arguments that the trial court erred by excluding evidence that a different uncle previously had anally raped D.C.

▄ To the extent defendant asserts that his proffered evidence of the previous assault was admissible under the exception for "similar evidence of sexual intercourse" set forth in section 18–3–407(1)(b), C.R.S.2009, we disagree. As we understand his argument, defendant contends that this evidence was particularly relevant since it explained D.C.'s knowledge of sexual activity and his ability to relate the specific nature of his contact with defendant. In other words, the argument is that D.C.'s knowledge of sexual acts came from his contact with the uncle and not from any contact with defendant. We reject the notion that the evidence of the other contact was admissible.

The statutory presumption of irrelevance does not apply to "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not commit-

ted by the defendant." § 18–3–407(1)(b); *see People v. Kyle*, 111 P.3d 491, 496 (Colo.App. 2004).

In *Kyle*, a division of this court held that "section 18–3–407(1)(b) applies only to evidence explaining the source or origin of *physical* evidence or condition, as indicated by the examples of 'semen, pregnancy, [or] disease' in the first clause of [section] 18–3–407(1)(b)." *Kyle*, 111 P.3d at 497. In so holding, the division rejected the defendant's assertion that evidence of a victim's previous, factually similar assault falls within the ambit of "any similar evidence of sexual intercourse" because it explains the origin of the victim's detailed "sexual knowledge." *Id.* The division reasoned that "acceptance of defendant's interpretation that 'similar evidence of sexual intercourse' includes evidence of a victim's prior sexual conduct would defeat the purpose of the rape shield statute" and "would render all the victim's prior sexual conduct relevant, in direct contradiction of the expressed intention to protect sexual assault victims from embarrassing probes into their personal lives." *Id.*

Here, defendant did not offer the evidence to explain the source or origin of physical evidence or a condition, such as semen or disease. Therefore, for the reasons articulated in *Kyle*, the evidence of D.C.'s prior sexual assaults by another uncle is not admissible under section 18–3–407(1)(b).

We also reject defendant's argument that evidence of D.C.'s previous, factually similar assaults by a different uncle is admissible under section 18–3–407(2), C.R.S.2009, because it is relevant to explain the origin of D.C.'s detailed knowledge of the alleged sexual assaults committed by defendant, and that by not allowing this evidence to be admitted at trial, the trial court denied defendant the right to cross-examine D.C. and to present a complete defense.

If the evidence does not fall within one of the statutory exceptions contained in section 18–3–407(1), the presumption of irrelevance may nevertheless be rebutted when the defendant offers proof that the evidence is relevant to a material issue in the case. If the trial court determines the offer of proof to be

sufficient, it must conduct an in camera hearing regarding the evidence. § 18–3–407(2); *People v. Murphy,* 919 P.2d 191, 197 (Colo. 1996).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

■ However, evidence within the ambit of section 18–3–407(2) is not automatically admissible, as it remains subject to the usual rules of evidence. Specifically, a trial court must apply CRE 403 to balance the probative value of the proffered evidence against any possible unfair prejudice. *Kyle,* 111 P.3d at 497.

Here, the trial court determined that defendant did not establish sufficient relevancy or materiality regarding evidence of D.C.'s prior sexual assaults by his uncle.

We review a trial court's determination concerning the relevance of proffered evidence for abuse of discretion and will not overturn the ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Id.* at 496.

■ Defendant asserts the evidence was relevant to attack D.C.'s credibility. Specifically, he argues that the evidence was relevant to rebut D.C.'s allegations; that the previous perpetrator was the person who committed the acts against D.C.; that the acts alleged were very similar (anal rape); and that D.C. repackaged the incident he experienced with the previous perpetrator to make his allegations against defendant. We disagree for several reasons.

First, mere similarity between two series of sexual assaults is insufficient to demonstrate the relevance of the facts of the first series to the facts at issue in the second series. Were it otherwise, a defendant would always be able to introduce evidence of previous assaults if any similarity could be demonstrated. That result directly contradicts the purpose of the rape shield statute. *Id.* at 498.

Second, no evidence was offered or presented to demonstrate that D.C. repackaged or transferred his previous experiences to these assaults. *See id.*

■ In any event, even if the evidence were relevant, the balancing test required by CRE 403 weighs in favor of excluding the evidence to avoid unfair prejudice to D.C. Any relevance of the prior assault was not so strong as to overcome the rape shield statute's presumption against the admissibility of such evidence. The unfair prejudice that would have resulted from the admission of such evidence, in the form of D.C.'s humiliation and psychological abuse, is precisely what the statute prohibits. *See id.*

Hence, we conclude that the trial court did not abuse its discretion by declining to hold an in camera hearing or by excluding this evidence.

■ Defendant also argues that his inability to cross-examine D.C. as to the prior sexual assault denied him his Sixth Amendment right to confront the witness against him. We reject this claim. The Sixth Amendment right to confrontation and the Fifth Amendment right to due process of law require only that the accused be permitted to introduce all relevant and admissible evidence. *People v. Harris,* 43 P.3d 221, 227 (Colo.2002) (citing *McKenna,* 196 Colo. at 374, 585 P.2d at 279); *see also United States v. Kasto,* 584 F.2d 268, 272 (8th Cir. 1978) (citing *United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). Because we have upheld the trial court's determination that the proffered evidence was irrelevant, its exclusion deprived defendant of no constitutional right. In sum, defendant failed to rebut the rape shield statute's presumption of irrelevance. *See Harris,* 43 P.3d at 227.

■ Last, defendant argues that the evidence was admissible under the "rule of completeness." Specifically, defendant argues that, because he was not permitted to introduce evidence that another male relative previously had sexually assaulted D.C., the jury was misled. Again, we disagree.

**356**

The rule of completeness does not establish in and of itself the admissibility of evidence that is protected by the rape shield statute. *People v. Melillo,* 25 P.3d 769, 776 (Colo.2001). The proponent of such protected evidence must still demonstrate material relevance under CRE 401 and probative value that is not substantially outweighed by the danger of unfair prejudice under CRE 403. *Id.*

Because we have upheld the trial court's determination that the proffered evidence was irrelevant and its probative value was substantially outweighed by the danger of unfair prejudice, defendant's claim under the "rule of completeness" necessarily fails.

### III. Prosecutorial Misconduct in Closing Argument

Defendant also argues that the prosecutor's closing argument constituted prosecutorial misconduct. We conclude that the statements do not require reversal under the plain error standard of review.

### A. Standard of Review

We review prosecutors' statements to which no objection was made at trial for plain error. *Domingo–Gomez v. People,* 125 P.3d 1043, 1053 (Colo.2005). Plain error occurs only when an error so undermines the fundamental fairness of a trial that it casts serious doubt on the reliability of the jury's verdict. *Id.* A reviewing appellate court must inquire into whether the error seriously affected the fairness or integrity of the trial. *Id.* Only prosecutorial misconduct which is "flagrantly, glaringly, or tremendously improper" warrants reversal. *Id.* (quoting *People v. Avila,* 944 P.2d 673, 676 (Colo.App.1997)).

A reviewing court should examine alleged improper argument in the context of the prosecutor's closing argument as a whole. The fact that the defendant did not object to the remarks may indicate his belief that the live argument was not overly damaging. Prosecutorial misconduct in closing argument is rarely so egregious as to constitute plain error. *Avila,* 944 P.2d at 676.

### B. Application

Here, defendant argues that two different comments in the prosecutor's closing argument amounted to prosecutorial misconduct requiring reversal.

### 1. Presumption of Innocence

Defendant contends that the prosecutor's closing argument unfairly deprived him of the presumption of innocence. We conclude that the prosecutor's comments did not rise to the level of plain error.

In his closing argument, the prosecutor told the jury, "The evidence has been completed. The presumption of innocence that we had when we started this case is gone. This man to my right stands, sits, before you, a guilty man." At the conclusion of his argument, the prosecutor stated, "The presumption of innocence that we had when we started this case is gone. Find him guilty, because he is guilty." Defendant did not object to these statements, and thus they are reviewable only for plain error. They do not meet that standard.

Initially, we note that, when read in context, the prosecutor did not improperly misstate the extent of defendant's presumption of innocence; rather, this record confirms that the prosecutor's statement was limited to a suggestion that the prosecution's overwhelming evidence removes the presumption of innocence to which defendant was entitled. Our review of the record reveals that the first comment was made by the prosecutor as an introduction to his summation of the evidence presented and his argument that the evidence establishes that defendant is guilty beyond a reasonable doubt. The second comment was made following his summation of the evidence presented and after comparing it to the elements of the crime for which defendant was charged. These comments, viewed in their proper context, were meant to address the quality of the prosecution's case rather than the presumption of innocence to which defendant was entitled.

Even assuming that the prosecutor misstated the law, we determine that the statements did not amount to prejudicial error affecting defendant's substantial rights.

██ The prosecutor made only two brief references to the presumption of innocence. We note that the number of times the jury is confronted with a misstatement of law is relevant in evaluating the nature and extent of the harm. *See Domingo–Gomez*, 125 P.3d at 1053. Here, the misstatements regarding the presumption of innocence occurred not in voir dire, opening statements, or rebuttal closing argument, but in the prosecutor's opening closing argument. It was followed by argument by defense counsel and proper rebuttal argument by the prosecutor. Because defense counsel made no objections to the remarks, there was no amplification of any prejudice caused by the court's overruling an objection.

Furthermore, the trial court's instructions to the jury were clear regarding the presumption of innocence: "Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all of the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt." The instruction further stated that the "burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged." This instruction tracked CJI–Crim. 3:04 (1983), the pattern jury instruction. Absent evidence to the contrary, we assume the jury heeded the court's instructions. *Ellsworth*, 15 P.3d at 1115; *Herr*, 868 P.2d at 1125.

Defendant relies upon *Mahorney v. Wallman*, 917 F.2d 469 (10th Cir.1990), in support of his argument that the prosecutor's comments warrant reversal of his conviction. In *Mahorney*, the prosecutor made improper statements concerning the presumption of innocence in voir dire, as well as in rebuttal closing argument. The Tenth Circuit granted habeas relief, finding that the improper comments undermined the defendant's constitutionally-based presumption of innocence. In *Mahorney*, the prosecutor stated the following in his rebuttal closing argument:

I submit to you, *under the law* and the evidence, that we are in a little different position today than we were when we first started this trial and it was your duty at that time, under the law of this land, as you were being selected as jurors, to actively in your minds presume that man over there not to be guilty of the offense of rape in the first degree, but, you know, things have changed since that time. I submit to you at this time, *under the law* and under the evidence, that that presumption has been removed, that that presumption no longer exists, that that presumption has been removed by evidence and he is standing before you now guilty. That presumption is not there any more.

*Id.* at 471 (emphasis added).

Two factors, which are not present in this case, led the *Mahorney* court to find substantial prejudice requiring reversal: First, defense counsel vigorously objected during voir dire and closing argument and was immediately and categorically overruled in the presence of the jury and, therefore, any prejudice was amplified by the court's ruling. *Id.* at 473. Second, unlike the prosecutor in *Mahorney*, the prosecutor here did not state that "under the law" the presumption of innocence had been removed. The trial court's instructions to the jury were clear that, under the law, the presumption of innocence "remains with the defendant throughout the trial and should be given effect by you unless, after considering all of the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt."

Although we do not approve of the prosecutor's statements, in light of their limited nature, together with the timing of the comments, lack of objection by defendant, and the instructions given by the trial court, we cannot conclude that they substantially affected the fairness of the trial.

We are aware that another division has similarly dealt with this issue in reaching the conclusion to reverse a conviction for cumulative reasons in a similar case, *People v. McBride*, 228 P.3d 216 (Colo.App. 2009), which is also being announced today. However, we deem the facts in this case to be distinguishable from the facts in *McBride*. Furthermore, *McBride* did not determine whether the error was plain.

### 2. Comments on Credibility

Defendant also complains of comments that, in his view, amount to improper vouching for A.C.'s credibility and an improper statement of the prosecutor's personal belief as to defendant's guilt. He cites to the prosecutor's following statements during closing argument:

> He picked the wrong victim.... What [A.C.] said happened to her is the truth. I told you before that this case is just that simple and just this unthinkable. And that's exactly how this case is.
>
> . . . .
>
> Now knowing [that A.C. came from defendant's room holding her vagina and bottom] in a vacuum and seeing those facts, and seeing what [Anita] described to you, you would come to the conclusion that this three-year-old child was telling the truth. Because three-year-old little girls don't make this up. They might lie about where their doll is. They might lie about who ate the most cookies. But they are not going to lie about this.
>
> . . . .
>
> Find [defendant] guilty, because he is guilty.

Defendant did not object to these comments and therefore we review for plain error.

Closing arguments are not a time for expressions of personal belief as to the guilt of the defendant, opinions as to the truth or falsity of witness testimony, or remarks about personal knowledge of evidence unknown to the jury. For example, a prosecutor should not state that he or she believes the child victim of a sexual assault. *Domingo–Gomez*, 125 P.3d at 1049, 1053 (citing *Wilson v. People*, 743 P.2d 415, 419 (Colo. 1987)); *Whitman*, 205 P.3d at 384.

A prosecutor's closing arguments may, however, include reasonable inferences drawn from the facts in evidence. *Domingo–Gomez*, 125 P.3d at 1048. In presenting their arguments, prosecutors have wide latitude in the language and style they choose to employ. *Id.*

Here, the prosecutor did not express a personal opinion of defendant's guilt. Rather, it was a proper comment on the evidence and reasonable inferences to be drawn therefrom, *see People v. Merchant*, 983 P.2d 108, 115 (Colo.App.1999), and was not a prohibited statement of personal belief. We read the prosecutor's statement asking the jury to "[f]ind [defendant] guilty, because he is guilty" as simply asking the jury to make a reasonable inference that defendant was guilty based on the evidence presented at trial. The prosecutor reiterated the prosecution's position that defendant was guilty of the crime charged. *See People v. Kendall*, 174 P.3d 791, 798 (Colo.App.2007).

However, the statements that A.C. was telling the truth and that her allegations were not lies were inappropriate expressions of a personal opinion about A.C.'s credibility. *See Domingo–Gomez*, 125 P.3d at 1051.

Having concluded the comments were improper, we must evaluate them in the context of the evidence introduced at trial and the closing argument as a whole. Improper argument that does not undermine the fundamental fairness of a trial so as to cast serious doubt on the reliability of the jury's verdict does not constitute plain error. *Id.* at 1053.

After careful review of the record, we conclude the comments to which defendant did not object did not so undermine the trial's fundamental fairness as to raise substantial questions about the verdict's reliability, and, thus, were not plain error. *See People v. Knight*, 167 P.3d 147, 157 (Colo.App.2006). They made up a small part of the prosecutor's closing argument, during which the prosecutor fairly summarized the evidence, and provided reasons, based on the evidence, why the jury should believe A.C.'s allegations. *See id.* The statements responded to defense counsel's comments, during opening statement, that there was no physical evidence to corroborate A.C.'s allegations. Moreover, the trial court provided the jury with a proper credibility instruction. The jury was also given a second instruction, which stated it was for the jury to determine the "weight and credit" to be given to A.C.'s out-of-court statement, informing the jury it

"shall consider" factors like her age, her maturity, the nature of her statements, and the circumstances in which the statements were made. *See id.*

## IV. Cumulative Error

■ Because we have identified only one instance of error, we reject defendant's theory of cumulative error. *See People v. Roy,* 723 P.2d 1345, 1349 (Colo.1986); *People v. Welsh,* 176 P.3d 781, 791 (Colo.App.2007).

## V. Constitutionality of the Sex Offender Sentencing Statute

■ Because defendant argues for the first time on appeal that Colorado's Sex Offender Lifetime Supervision Act is unconstitutional, we need not address that argument. *See People v. Cagle,* 751 P.2d 614, 619 (Colo. 1988); *People v. Yascavage,* 80 P.3d 899, 901 (Colo.App.2003), *aff'd,* 101 P.3d 1090 (Colo. 2004). Nevertheless, we note that several divisions of this court have previously considered the constitutionality of the Act and have rejected such challenges. *People v. Lehmkuhl,* 117 P.3d 98 (Colo.App.2004); *People v. Dash,* 104 P.3d 286 (Colo.App.2004); *People v. Oglethorpe,* 87 P.3d 129 (Colo.App.2003); *People v. Strean,* 74 P.3d 387 (Colo.App. 2002). We decline to reconsider and depart from those decisions and reject defendant's contentions for the reasons stated in those cases. *See People v. Firth,* 205 P.3d 445, 452 (Colo.App.2008).

## VI. Sentencing

Defendant contends that the fifteen-year lower limit of his indeterminate sentence exceeds the maximum authorized by law. The People concede this contention, and we agree.

### A. Standard of Review

We review issues of statutory construction de novo. *Alvarado v. People,* 132 P.3d 1205, 1207 (Colo.2006).

### B. The Act

The Colorado Sex Offender Lifetime Supervision Act of 1998 requires that sex offenders receive indeterminate sentences. § 18–1.3–1004, C.R.S.2009. Specifically, it mandates that those convicted of certain crimes be sentenced to "at least the minimum of the presumptive range specified in section 18–1.3–401 for the level of offense committed and a maximum of the sex offender's natural life." § 18–1.3–1004(1)(a), C.R.S. 2009. Sexual assault is one of the crimes to which the Act's sentencing provisions apply. § 18–1.3–1003(5)(a)(I)(A), C.R.S.2009.

■ The Act requires that only the upper end of a sentence be indeterminate. *See Vensor v. People,* 151 P.3d 1274, 1277–78 (Colo.2007). Courts may impose sentences of up to twice the maximum of the presumptive range if aggravating factors are present. § 18–1.3–401(6), C.R.S.2009. Thus, the Act must be construed to require sentencing to an upper term of the sex offender's natural life and a lower term "of a definite number of years, not less than the minimum nor more than twice the maximum of the presumptive range authorized for the class of felony of which the defendant stands convicted." *Vensor,* 151 P.3d at 1279.

### C. Application

The sexual assault conviction here is a class four felony. § 18–3–405(1), (2), C.R.S. 2009. The presumptive sentencing range for a class four felony is two to six years of imprisonment. § 18–1.3–401(1)(a)(V)(A), C.R.S.2009.

Defendant was sentenced to a minimum of fifteen years in the custody of the DOC. That minimum sentence is greater than twice the six-year presumptive maximum for a class four felony. Thus, defendant's sentence exceeds what is authorized by law.

The judgment is affirmed. Defendant's sentence is vacated, and the case is remanded to the trial court for resentencing.

Judge PLANK * and Judge NEY * concur.

---

* Sitting by assignment of the Chief Justice under

provisions of Colo. Const. art. VI, § 5(3), and

