24CA2015 Peo v Scott 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2015
Boulder County District Court No. 23CR1091
Honorable Dea M. Lindsey, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Shawn Scott,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Grove and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Philip J. Weiser, Attorney General, Alexandra Taylor, Assistant Attorney
General Fellow, Denver, Colorado, for Plaintiff-Appellee

The Noble Law Firm, LLC, Antony Noble, Lakewood, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Michael Shawn Scott, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child less than fifteen years old by one in a position of trust as a part of a pattern of abuse. He contends that the trial court erroneously denied his motion to admit evidence as relevant under Colorado's rape shield statute, section 18-3-407, C.R.S. 2025. We disagree and, therefore, affirm.

## I.     Background

¶ 2     In 2022, seventeen-year-old A.N. told her older sister, G.N., that she was starting to remember being inappropriately touched by Scott, a family friend, when she was a young child. According to A.N., physical intimacy with her new boyfriend had triggered these memories. G.N. told their parents, who spoke with A.N. about her disclosures. Later, A.N. and her parents had a general conversation with A.N.'s younger sister, E.N., about A.N.'s memories. E.N. then said she remembered having "uncomfortable" experiences with Scott as a young girl. The family later filed a report with the police.

¶ 3     A.N. and E.N. separately participated in forensic interviews, during which they recollected their experiences with Scott.

¶ 4        During a follow-up interview with a detective, A.N. wrote the following statement:

>    My boyfriend and I heard a term I have/had
>    never heard before and I asked him what it
>    meant.  I knew about regular sex but didn't
>    know that there was a thing called "anal sex."
>    When I learned what this was I had a sick
>    feeling and a memory of being in a shower in a
>    lot of pain with the individual and later using
>    the bathroom and wiping away blood and this
>    was before my period ever started.  It is fuzzy, I
>    feel sick and wierd [sic] when I try to
>    remember.

A.N. told the detective that the individual was Scott, that he had penetrated her with his penis, and that the memory had occurred to her after she tried anal sex with her boyfriend.

¶ 5        The prosecution charged Scott with one count of sexual assault on a child less than fifteen years old (A.N.) by one in a position of trust as a part of a pattern of abuse, and one count of sexual assault on a child (E.N.) by one in a position of trust.

¶ 6        A month before trial, Scott filed a motion to admit, as relevant under the rape shield statute, A.N.'s statements to the detective that she recalled anal penetration by Scott after talking about and engaging in anal sex with her boyfriend.  The trial court denied

2

Scott's motion after a hearing. The court also denied Scott's two renewals of his motion during trial.

¶ 7      At trial, A.N. testified, among other things, that at separate times Scott had put her hand on his erect penis and grabbed her vagina. She also testified that she had a "fuzzy" memory of being pressed up against the wall in the shower with Scott while both of them were naked, feeling pain in her anus from Scott's penis, and later finding blood when she wiped with toilet paper.

¶ 8      E.N. testified that she recalled laying across Scott's lap and feeling his erection during a Christmas photoshoot.

¶ 9      Scott testified and denied any sexual misconduct.

¶ 10      The jury acquitted Scott of the charge pertaining to E.N. but convicted him of the charge pertaining to A.N. The court sentenced him to an indeterminate term of ten years to life in prison.

## II.    Discussion

¶ 11      Scott contends that the trial court erred by denying his motion to admit A.N.'s statements about discussing and having anal sex with her boyfriend as relevant under the rape shield statute and that, as a result, he was denied his constitutional rights to present a defense and to conduct meaningful cross-examination.

¶ 12    Although the parties disagree as to preservation and the standard of reversal, we need not resolve those disputes because we discern no evidentiary error at all.

### A.    Applicable Law and Standard of Review

¶ 13    The purpose of Colorado's rape shield statute is "to protect sexual assault victims from humiliating public fishing expeditions into their past sexual conduct." *People v. Conyac*, 2014 COA 8M, ¶ 110.  The General Assembly "has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders." *People v. McKenna*, 585 P.2d 275, 278 (Colo. 1978).

¶ 14    With two exceptions not relevant here, the rape shield statute deems evidence of specific instances of the victim's prior or subsequent sexual conduct presumptively irrelevant. § 18-3-407(1).  But a party may overcome the presumption of irrelevance if a trial court finds, based on an offer of proof, that the sexual conduct evidence is "relevant to a material issue to the case." § 18-3-407(2)(a), (e).

¶ 15    Evidence proffered under an exception to the rape shield statute is subject to the relevancy and prejudice limitations under CRE 401 and 403. *People v. Sims*, 2019 COA 66, ¶ 45. Evidence is relevant if it has "any tendency to make the existence of a fact of consequence more or less probable." *People v. Hood*, 2024 COA 27, ¶ 19; *see* CRE 401. Although the Colorado Rules of Evidence favor the admissibility of relevant evidence, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403; *Hood*, ¶ 19. "In reviewing the trial court's determination, we assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected." *Hood*, ¶ 19 (quoting *People v. Clark*, 2015 COA 44, ¶ 18).

¶ 16    We review evidentiary rulings, including the exclusion of evidence under the rape shield statute, for an abuse of discretion. *Conyac*, ¶ 107. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Hood*, ¶ 6.

## B. Additional Facts

¶ 17    In his motion to admit evidence of A.N.'s past sexual conduct, Scott argued that her statements about anal sex were relevant because they provided an alternative source for her sexual knowledge and called into question the credibility of her allegations against him.[1]  He asserted that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because the evidence would directly assist the jury in determining the truth of A.N.'s allegations and "was made contemporaneously with A.N.'s outcry of the same sexual conduct."

¶ 18    At the hearing, defense counsel said that the purpose of the sexual conduct evidence was not to embarrass A.N. or to delve into her sexual history.  Rather, counsel argued, it would be very difficult to address how her disclosure of anal penetration by Scott occurred — and whether it was influenced by any other event —

---

[1] The People argue that the latter rationale is not permitted because a "defendant cannot introduce evidence of a victim's prior sexual history to attack the credibility of a victim as a witness." *People v. Wallen*, 996 P.2d 182, 186 (Colo. App. 1999).  While this is true, in his reply brief, Scott expressly denies intending to introduce the evidence at issue for this reason.

without discussing what prompted her memory of the alleged assaults to surface.

¶ 19     The prosecutor objected, arguing that evidence that A.N. had anal sex with her boyfriend was unduly prejudicial. He also said that evidence of that specific act was unnecessary because the memory of anal penetration by Scott could be explained, like A.N.'s other memories, by referring generally to her intimate experiences with her boyfriend.

¶ 20     In its written order denying Scott's motion, the trial court found that A.N.'s past experience regarding anal sex with her boyfriend was relevant as a possible alternative source of knowledge regarding the specific allegation of anal penetration. But the court found that the probative value of the evidence was limited because the jury would already be hearing evidence that A.N.'s memories of sexual assault by Scott were triggered by consensual sexual activity with her boyfriend. Citing *Conyac*, the court further found that (1) A.N. was old enough to know about sexual matters when she made the outcry, regardless of her experience with Scott; (2) there was an alternative source for A.N.'s knowledge because she was sexually active with her boyfriend; and (3) there was no indication

7

that the prosecution intended to argue that A.N. was "sexually naïve."

¶ 21    As to prejudice, the trial court found that the danger of unfair prejudice substantially outweighed the probative value of the evidence because it would allow Scott "to embark on a line of questioning that . . . would undoubtedly be embarrassing for A.N., and possibly paint her in a bad light to the jury, both of which the Rape Sheild Statute attempts to avoid."

¶ 22    At the start of trial, defense counsel renewed Scott's motion to introduce evidence of A.N.'s statements about sexual activity with her boyfriend as relevant under the rape shield statute.  The trial court denied the request, resting on its prior ruling.

¶ 23    During A.N.'s direct testimony, she expressed that the memories of Scott's inappropriate touching surfaced after she became "more physically intimate" with her boyfriend.  When the prosecutor asked what triggered her memories of the incidents with Scott, she said,

> Well, you know, [my boyfriend is] very
> respectful and we, like, agreed to wait till
> marriage and stuff.  And he is very firm on that
> boundary, too.  But even just cuddling, he
> accidentally brushed my thigh, and I don't

8

think -— like it was consensual . . . .  It wasn't anything he was trying to do in a bad way. But I remember . . . some of those things and felt really just sick to my stomach and hot and panicky and just, like, really weird and was like, had to apologize to him because I just kind of . . . jumped back a little bit . . . .

¶ 24    A.N. then explained that her recollection of the incidents with Scott occurred over time, during intimate moments with her boyfriend: "[W]e just were, like, hugging and cuddling and stuff, but then . . . if we were, like, kissing or more just stuff like that . . . then I would remember something or bits and pieces with more start to come together."  Later, the prosecutor asked A.N., "When you're having these physical, intimate moments with your boyfriend, and you said you had specific memories, were those more vivid?"  A.N. responded, "Yes.  Yes."

¶ 25    On cross-examination, defense counsel and A.N. had the following exchange:

> [DEFENSE COUNSEL:] And you [and your boyfriend] were starting to get physical; is that right?
>
> [A.N.:] Yes.
>
> [DEFENSE COUNSEL:] Okay.  You were engaging in what we might call intimate physical activities?

9

[A.N.:] Yes.

. . . .

[DEFENSE COUNSEL:] It's the fact that you two are getting physically intimate, and he's asking and talking about physical things, that's what you told people was the reason these memories came back, right?

[A.N.:] Just consensual.  Yes.  But consensual.

[DEFENSE COUNSEL:] Okay.  Yeah.  Okay. But . . . you were doing it, right?

[A.N.:] Yes.

¶ 26    A.N.'s boyfriend also testified.  On direct, the prosecutor asked him if there were times when he and A.N. were "hanging out" or "doing anything" and she got upset.  He responded:

[T]here were a few moments where we would be hanging out, and I don't like to rush anything with her.  I respect her very much, and I never want to make her uncomfortable in any way.  So in the beginning of our relationship we took everything very slow.  And I mean also too, because we're also Christians and we also want to wait till marriage.  But during some times when we would be, you know, cuddling or sitting together on the TV there would be moments where she would sometimes, kind of I guess, phase out and kind of focus on something else.  And she would sometimes feel uneasy at first.

¶ 27　When defense counsel asked A.N.'s boyfriend on cross-examination if "hanging out" meant "getting intimate," he said, "Nope." Defense counsel then asked, "And are you saying you then immediately said after you wanted to respect her and not make her do anything, and you had that comment about being Christians? Are you saying that during moments of intimacy is when she was pulling back?" He responded, "Usually."

¶ 28　The next day, defense counsel again renewed Scott's motion to introduce evidence under the rape shield statute based on the testimony from A.N. and her boyfriend indicating they were waiting for marriage and were Christian. The court denied the request.

### C.　Probative Value Versus Unfair Prejudice

¶ 29　Scott argues that the trial court abused its discretion by finding that the probative value of the evidence of A.N. trying anal sex with her boyfriend was outweighed by the danger of unfair prejudice. Specifically, he claims that the court didn't assume the maximum probative value the jury might give the evidence and the minimum unfair prejudice reasonably expected. *See Hood*, ¶ 19.

¶ 30　As an initial matter, the People don't challenge the trial court's finding that the evidence was "marginally relevant to the

11

circumstances of [A.N.'s] disclosure." We therefore agree with Scott's assertion that the People concede he "overcame the presumption of irrelevance," making the only contested issue on appeal the trial court's findings under CRE 403 as to probative value and prejudice.

## 1. Probative Value

¶ 31     Scott asserts that the probative value of the evidence as an alternative source of A.N.'s knowledge of anal sex was greater than the trial court acknowledged because A.N. told the detective she didn't know what anal sex was until talking with her boyfriend and because she compared her experience with her boyfriend to her memory of the alleged assault. Citing *People v. Osorio-Bahena*, 2013 COA 55, he argues that the degree of similarity between A.N.'s experience with her boyfriend and her allegations against Scott could have led the jury to find that her experience with her boyfriend "gave her the knowledge to 'contrive or imagine' the alleged anal penetration by Scott."

¶ 32     Evidence of prior sexual conduct may be relevant to show an alternative source for a child victim's sexual knowledge and to rebut "the inference that a child victim could not describe the sexual acts

12

unless the defendant had committed the alleged acts." *Id.* at ¶ 27 (quoting *State v. Grovenstein*, 530 S.E.2d 406, 410 (S.C. Ct. App. 2000)). The probative value of such evidence may rest on the degree of similarity between the alleged assault and the other sexual activity. *Id.* at ¶ 31. *But see People v. Kyle*, 111 P.3d 491, 498 (Colo. App. 2004) ("[M]ere similarity between two series of sexual assaults is insufficient to demonstrate the relevance of the facts of the first series to the facts at issue in the second series."), *disapproved of on other grounds by*, *Zoll v. People*, 2018 CO 70. But it also "necessarily depends" on the nature of the sex acts involved, the child's age and circumstances, and the child's other sources of knowledge. *Osorio-Bahena*, ¶ 31. A court may also consider "whether less prejudicial means are available" to show the child's sexual knowledge, *id.*, and "whether the defense or the prosecution has relied upon the inference that a child of a certain age would or would not have knowledge of sexual acts," *Conyac*, ¶ 118.

¶ 33      "Colorado case law does not assume or presume that a child victim is sexually naïve." *Id.* at ¶ 117. Rather, courts have said that "sexually mature children may be less likely to be confused

13

about the perpetrator's identity and are capable of understanding matters of a sexual nature." *Id.*

> While it might be possible, with regard to children of a sufficiently tender age, to infer, without more, a complete lack of knowledge about sexual matters . . ., this could hardly be the case of a child old enough to interact with other children and come in contact with television or other forms of media entertainment.

*Pierson v. People*, 2012 CO 47, ¶ 20.

¶ 34  Here, A.N. was seventeen at the time of her disclosures and nineteen at the time of trial. While the jurors were not made aware that A.N. had told the detective she didn't know about anal sex until her boyfriend explained it to her, they could have inferred, based on her age, that her access to "[high] school peers, social media, television, and music" would have contributed to her knowledge of anal sex. *Conyac*, ¶ 119.

¶ 35  Moreover, A.N. testified several times that her memories of sexual assaults by Scott, including anal penetration, were triggered by physical intimacy with her boyfriend. The jury could therefore consider an alternative basis for A.N.'s sexual knowledge aside from that gained from Scott's alleged assaults. *See id.* at ¶ 120.

14

¶ 36    Also, the prosecutor didn't raise the issue of "precocious sexual knowledge" or argue that A.N. was sexually naïve and that her experience with Scott was the only source of her ability to describe anal penetration.  *Id.* at ¶ 121.

¶ 37    Thus — despite the alleged similarities between A.N.'s experience with her boyfriend and the allegation against Scott — the trial court properly found that the probative value of the evidence that A.N. had anal sex with her boyfriend was limited because (1) the jury could have inferred that she was old enough to know about anal sex when she outcried, regardless of her experience with Scott; (2) there was alternative evidence of her sexual knowledge; and (3) the prosecution did not argue that she was sexually naïve and had no other source of sexual knowledge. *See id.* at ¶ 124.

## 2.    Unfair Prejudice

¶ 38    Scott claims that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because introduction of the evidence "would not have been a broad fishing trip to probe into [A.N.'s] sexual history" but "would have been a targeted inquiry into one specific act that was disclosed to the police

15

and was the trigger of her recalled memory of the alleged sexual assault."

¶ 39　But the rape shield statute specifically prohibits the introduction of "evidence of *specific instances* of the victim's . . . prior or subsequent sexual conduct." § 18-3-407(1) (emphasis added). Just because Scott alleges this would have been a "targeted inquiry into one specific act" and not a "broad fishing trip" does not place the evidence outside the purview of the statute. *See People v. MacLeod*, 176 P.3d 75, 78 (Colo. 2008) (the rape shield protections apply no matter the purpose for which the defendant intended to introduce the evidence at trial).

¶ 40　Furthermore, despite the limited probative value of the evidence, "the balancing test required by CRE 403 weighs in favor of excluding the evidence to avoid unfair prejudice." *People v. Villa*, 240 P.3d 343, 355 (Colo. App. 2009). Any relevance of A.N.'s experience of anal sex with her boyfriend "was not so strong as to overcome the rape shield statute's presumption against the admissibility of such evidence." *Id.* The introduction of such evidence — in a public setting — would substantially risk A.N.'s

"humiliation and psychological abuse, [which] is precisely what the statute prohibits." *Id.*

### D. Testimony that A.N. and Her Boyfriend Were "Waiting Till Marriage"

¶ 41 Finally, Scott argues that the trial court abused its discretion by excluding the evidence of A.N. trying anal sex with her boyfriend "after they both denied physical intimacy at trial and presented themselves as good Christians who were waiting for marriage." He asserts that after A.N. and her boyfriend "denied physical intimacy," the jury was no longer aware that it was the sexual activity between A.N. and her boyfriend that triggered her memories of assault by Scott. Therefore, he claims, the jury could have inferred that A.N. was not sexually experienced and that she obtained her knowledge of anal sex from abuse by Scott, which were inferences he needed to rebut with the evidence of A.N.'s prior sexual conduct.

¶ 42 But the record doesn't support Scott's assertion that A.N. and her boyfriend outright denied physical intimacy, leaving the jury to conclude that they were not sexually active. On direct and cross-examination, A.N. confirmed that she had been engaging in intimate physical activities with her boyfriend, which were what

17

triggered her memories of incidents with Scott. And during her boyfriend's cross-examination, he said that it was during "moments of intimacy" that A.N. "[u]sually" pulled back. True, A.N. and her boyfriend specifically cited kissing, cuddling, hugging, and "more just stuff like that," and said they were "wait[ing] till marriage." But neither the prosecutor nor defense counsel asked either witness what "waiting till marriage" meant, which could mean different things to different people. And to the extent that A.N. and her boyfriend contradicted themselves on the stand, it was up to the jury to weigh the credibility of witnesses, determine the weight to give certain evidence, and resolve inconsistencies in the evidence. *See People v. Poe*, 2012 COA 166, ¶ 14.

¶ 43     Furthermore, as we have discussed, even without sexual activity between A.N. and her boyfriend as an alternative source of her knowledge of anal sex, the probative value of the evidence that she had anal sex with her boyfriend was still limited because the jury could have inferred that she was old enough to know about anal sex regardless of her experience with Scott, and the prosecution did not argue that she was sexually naïve. Moreover, the risk of unfair prejudice to A.N. from the introduction of the

18

evidence remained high, as this is precisely the type of evidence that the rape shield statute prohibits.

¶ 44    For these reasons, we conclude that the trial court did not abuse its discretion by denying Scott's motion to introduce evidence as relevant under the rape shield statute.

### III.    Disposition

¶ 45    The judgment of conviction is affirmed.

JUDGE GROVE and JUDGE MOULTRIE concur.