The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Bryson KNIGHT, Defendant–Appellant.

No. 03CA1526.

Colorado Court of Appeals,
Div. I.

Nov. 30, 2006.

Certiorari Denied Sept. 4, 2007.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Bryson Knight, appeals the trial court's judgment of conviction entered on jury verdicts finding him guilty of second degree murder and first degree aggravated motor vehicle theft. We affirm.

## I. Background

The victim challenged Knight to a fistfight. Knight later confronted the victim and shot and killed him. Knight drove a stolen car to and from the homicide.

Knight was charged with one count of first degree murder after deliberation and one count of first degree aggravated motor vehicle theft. At trial, Knight testified that he shot the victim in self-defense. He admitted that he had been driving a stolen car.

The jury found Knight guilty of second degree murder and aggravated motor vehicle theft. The trial court sentenced him to thirty-three years in prison, plus a five-year period of mandatory parole.

## II. Motion to Suppress

Knight contends that the trial court erred by refusing to suppress a statement that he made to detectives after invoking his Fifth Amendment right to counsel. We disagree.

In reviewing a trial court's suppression ruling, we accord deference to the trial court's findings of historical fact and review de novo its application of the legal standards to those facts. *People v. Adkins,* 113 P.3d 788, 791 (Colo.2005).

A criminal suspect has the right to remain silent and to have an attorney present during custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Once a suspect invokes the right to an attorney, all interrogation in the absence of counsel must cease. If interrogation continues, even voluntary statements made by the suspect will be inadmissible during the prosecution's case-in-chief. *Miranda v. Arizona, supra,* 384 U.S. at 474, 86 S.Ct. at 1627–28.

A statement is the product of interrogation if it is made in response to direct questioning or to words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). A statement is not the product of interrogation merely because it is made after the suspect has been informed of the charges against him. *People v. Rivas,* 13 P.3d 315, 319 (Colo.2000). To constitute interrogation, the officer's words or actions must "be such that he should know they will be perceived by the suspect as provocative rather than merely informative or permissive." *People v. Rivas, supra,* 13 P.3d at 320.

Here, one of the detectives who interviewed Knight testified that Knight requested a lawyer immediately after being advised of his *Miranda* rights. Knight then asked, "What am I charged with exactly?" Another detective told Knight that he had been charged with first degree murder. When Knight asked whether he could be charged with "something less," the other detective

answered that "there are several types of murder charges such as manslaughter or self-defense ... such as in this case the victim had a gun on him." Knight responded, "He did?"

Knight sought to suppress the response, "He did?" The trial court ruled that this statement was admissible because it was volunteered and not the product of interrogation.

We agree with the trial court's ruling. The detective's answer to Knight's question was merely informative and was not reasonably likely to elicit an incriminating response. Thus, Knight's statement was not the product of interrogation.

### III. Motion to Sever Counts

■ Knight contends that the trial court erroneously refused to order separate trials on the charges of first degree murder and aggravated motor vehicle theft. We reject this contention.

Criminal offenses may be tried together if they "are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Crim. P. 8(a)(2). If a joinder of offenses will prejudice a defendant, "the court may order an election or separate trials of counts." Crim. P. 14.

■ We will disturb a trial court's ruling on a motion to sever counts only if the defendant shows an abuse of discretion. *People v. Aalbu*, 696 P.2d 796, 806 (Colo.1985). To show an abuse of discretion, the defendant must demonstrate that (1) the joinder caused actual prejudice, and (2) the trier of fact was unable to separate the facts and legal principles applicable to each offense. *People v. Rosa*, 928 P.2d 1365, 1373 (Colo.App.1996).

Here, the trial court denied Knight's request for separate trials because the two charges involved interrelated proof and because Knight failed to demonstrate that he would be prejudiced by a joint trial. We conclude that this ruling was within the bounds of the trial court's discretion.

The record supports the trial court's determination that the two charges involved interrelated proof. Evidence that Knight drove the stolen vehicle to and from the scene of the homicide was relevant in the prosecution of both offenses: (1) it satisfied an element of aggravated motor theft under § 18–4–409(2)(d), C.R.S.2006; and (2) it was relevant to the culpable mental state element of first degree murder because it supported an inference that Knight had consciously acted to avoid detection (which in turn supported an inference that Knight had acted after deliberation).

Knight has not shown that he was prejudiced by the joint trial. The trial court instructed the jury not to let its decision on one count influence its decision on any other, and there is no indication that the jury was unable to separate the facts and legal principles applicable to each offense.

We therefore uphold the trial court's ruling.

### IV. Impeachment of Prosecution's Expert

■ Before trial, the Denver Police Department began an internal investigation to determine whether certain officers had moonlighted at second jobs during on-duty hours. Defense counsel learned that a prosecution witness—a detective who was endorsed as an expert in crime scene reconstruction—was one of the officers under investigation.

Defense counsel subpoenaed records of the investigation and asked the court to review those records in camera to determine whether any documents could be used to impeach the detective's testimony. In response, the prosecution asked the court to quash the subpoenas and to preclude the defense from cross-examining the detective about the moonlighting allegations.

The trial court granted the prosecution's requests. It declined to conduct an in camera review on the ground that defense counsel's request was untimely. It also ruled that the alleged moonlighting, even if admitted by the detective, would be inadmissible under CRE 403.

Knight challenges both of these rulings. We conclude that the trial court did not abuse its discretion in disallowing the evidence under CRE 403. Because this conclusion renders harmless any error in failing to conduct an in camera review, we do not address the issue of timeliness.

## A. Governing Law

■ The right of a criminal defendant to confront adverse witnesses is guaranteed by the Sixth Amendment to the United States Constitution and by article II, § 16 of the Colorado Constitution. *See Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *People v. Thurman,* 787 P.2d 646, 651 (Colo.1990). The defendant must be given an opportunity for effective cross-examination. *Merritt v. People,* 842 P.2d 162, 166 (Colo.1992).

■ Effective cross-examination does not mean unlimited cross-examination. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *People v. Cole,* 654 P.2d 830, 833 (Colo.1982). A trial court has wide latitude to place reasonable limits on cross-examination based on concerns about prejudice, confusion of the issues, undue delay or waste of time, and marginal relevance. *Merritt v. People, supra,* 842 P.2d at 166; *People v. Crawford,* 191 Colo. 504, 553 P.2d 827 (1976).

■ Unless the trial court restricts cross-examination to such an extent as to constitute a denial of the right of confrontation, the scope and limits of cross-examination are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Merritt v. People, supra; People v. Crawford, supra,* 191 Colo. at 506, 553 P.2d at 829.

## B. Discussion

Knight argues that the moonlighting allegations were admissible to show (1) the detective's motive to testify for the prosecution and (2) the detective's character for untruthfulness. We address and reject these arguments as follows.

### 1. Motive to Testify

Relying on *Davis v. Alaska, supra,* Knight argues that evidence of the moonlighting investigation was admissible to show that the detective had a motive to testify favorably for the prosecution. According to Knight, the detective could have thought that, by favoring the prosecution, he might avoid potential criminal charges and disciplinary action for moonlighting. We conclude that the trial court properly excluded this line of inquiry.

The record shows that, at the time of trial, the police department had not yet concluded its internal investigation of the moonlighting allegations. It also shows that, once the internal investigation was concluded, the Adams County District Attorney would act as special prosecutor.

Under these circumstances, the trial court was correct in ruling that this was "not a *Davis v. Alaska* situation." The detective had no motive to favor Denver prosecutors because they were not in a position of control over the moonlighting case. Any potential disciplinary or charging decision would be made by police administrators or the special prosecutor. *See State v. Lindh,* 161 Wis.2d 324, 468 N.W.2d 168 (1991) (expert witness had no reason to favor prosecutors by testifying in a murder case where allegations against him were being handled by a special prosecutor); *see also United States v. Ellzey,* 936 F.2d 492, 496–97 (10th Cir.1991); *People v. Melanson,* 937 P.2d 826, 839 (Colo.App. 1996); *People v. Sims,* 192 Ill.2d 592, 249 Ill.Dec. 610, 736 N.E.2d 1048, 1067 (2000).

Knight asserts that the prosecutors could have influenced the disciplinary and charging decisions even though they were not in direct control. We are not persuaded.

Knight's argument has logical force only if the detective believed the following to be true: (1) Denver prosecutors wanted the detective to provide something other than strictly truthful testimony; (2) in exchange for such testimony, the Denver prosecutors would try to influence, on the detective's behalf, the police department's disciplinary decisions and the special prosecutor's charging decisions; and (3) the police administrators and special prosecutor would reward the

efforts of the Denver prosecutors. But the record contains no indication that the detective believed these things, nor does it suggest that any of them was actually true.

Because this line of inquiry was speculative, we conclude that the trial court properly excluded it under CRE 403. The trial court could reasonably have concluded that this inquiry would have triggered a time-consuming and confusing foray into collateral and prejudicial matters and would have shed no light on the reliability of the detective's expert opinion. *See People v. Walker,* 666 P.2d 113, 122 (Colo.1983) (limitation of cross-examination concerning investigation into officer-involved shooting properly prevented "the sideshow from taking over the circus"); *State v. Lindh, supra,* 468 N.W.2d at 180 (evidence of sexual misconduct with patients did not tend to show that the state's psychiatric expert was less qualified to examine the defendant or render an opinion on his mental capacity).

## 2. Character for Truthfulness

Knight also argues that evidence of moonlighting would have demonstrated the detective's character for untruthfulness. We again find no abuse of discretion.

Under CRE 608(b), a witness may be cross-examined about specific instances of conduct that are probative of the witness's character for truthfulness or untruthfulness. *People v. Pratt,* 759 P.2d 676, 681 (Colo. 1988). However, the trial court should exclude evidence that has little bearing on credibility, places undue emphasis on collateral matters, or has the potential to confuse the jury. CRE 403; *People v. Cole, supra,* 654 P.2d at 833.

Without knowing specific details, we cannot determine whether the detective's conduct was probative of his character for untruthfulness. If akin to theft, the conduct would not have been probative of character for untruthfulness. *See People v. Jones,* 971 P.2d 243 (Colo.App.1998) (shoplifting involves some form of dishonesty, but is not probative of a propensity to be truthful or untruthful). But if the conduct involved affirmative falsehoods, it would have been probative. *See United States v. Simonelli,* 237 F.3d 19, 22–

23 (1st Cir.2001) (altering time cards and inflating bills is probative of character for untruthfulness); *United States v. Davis,* 183 F.3d 231, 256, *amended,* 197 F.3d 662 (3d Cir.1999) (falsifying police department gasoline logs and lying about previous misconduct is probative of character for untruthfulness); *see also People v. Gillis,* 883 P.2d 554 (Colo. App.1994) (lying to a law enforcement officer is probative of character for untruthfulness).

However, we conclude that the trial court did not abuse its discretion in excluding the evidence. Defense counsel premised her offer of proof on the assertion that the detective's conduct constituted a theft. As previously noted, theft is generally not probative of character for untruthfulness. *See People v. Jones, supra; State v. Gollehon,* 262 Mont. 1, 864 P.2d 249, 258 (1993). And the evidence would have shed little light on the reliability of the detective's expert opinion. Thus, the trial court could reasonably have concluded that any probative value of the evidence was substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury" under CRE 403.

## V. Appearance of Defense Witnesses

■ Knight contends that the trial court abused it discretion by denying his request to allow two incarcerated defense witnesses to appear in court unshackled and in street clothes. We conclude that any error was harmless.

### A. Governing Standards

■ The presumption of innocence is directly undermined when the defendant is required to appear before the jury in visible restraints or prison clothes. Thus, the court may deny a defendant's request to appear unrestrained and in street clothes only when necessary for physical security, prevention of escape, or courtroom decorum. *Deck v. Missouri,* 544 U.S. 622, 628–29, 125 S.Ct. 2007, 2012, 161 L.Ed.2d 953 (2005); *People v. Dillon,* 655 P.2d 841, 846 (Colo.1982).

■ In contrast, the presumption of innocence is not directly undermined when a defense witness appears in visible restraints

or prison clothes. *Kennedy v. Cardwell,* 487 F.2d 101, 105 n. 5 (6th Cir.1973). Nevertheless, the use of restraints or prison clothes may undermine the witness's credibility and thus harm the defendant. *Harrell v. Israel,* 672 F.2d 632, 635 (7th Cir.1982); *Kennedy v. Cardwell, supra; Williams v. State,* 629 P.2d 54, 56 (Alaska 1981); *Jackson v. State,* 698 So.2d 1299, 1303 (Fla.Dist.Ct.App.1997); *State v. Smith,* 346 N.J.Super. 233, 787 A.2d 276, 280 (App.Div.2002).

■ For this reason, the trial court may require a defense witness to appear in visible restraints or prison clothes only when necessary to maintain order. *See Harrell v. Israel, supra,* 672 F.2d at 635–36 (requiring a finding of "extreme need" for use of restraints); *Kennedy v. Cardwell, supra,* 487 F.2d at 105 n. 5 (requiring "special circumstances where there is evident danger of escape or harm to individuals"); *see also* ABA Standards for Criminal Justice 15–3.2(b)–(c) (3d ed. 1996) ("The court should not permit a defendant or witness to appear at trial in the distinctive attire of a prisoner, unless waived by the defendant.... [N]or should defendants and witnesses be subjected to physical restraint while in court unless the court has found such restraint necessary to maintain order."); *State v. Allah Jamaal W.,* 209 W.Va. 1, 543 S.E.2d 282, 287 (2000) (adopting ABA approach).

■ If the defendant wants an incarcerated witness to appear without visible restraints and in street clothes, defense counsel must make a timely request and arrange for the witness's attire. *See State v. Allah Jamaal W., supra,* 543 S.E.2d at 287 & n. 13; *cf. Estelle v. Williams,* 425 U.S. 501, 508–09, 96 S.Ct. 1691, 1695, 48 L.Ed.2d 126 (1976) (no constitutional violation where defendant failed to object to standing trial in prison clothes).

■ In addressing the defendant's request, the court should balance the need for courtroom security against the potential prejudice to the defendant. *State v. Smith, supra,* 787 A.2d at 281. The court should consider whether the witness presents a security risk, poses a threat of escape, or is otherwise likely to be disruptive. *Jackson v.*

*State, supra,* 698 So.2d at 1303; *State v. Allah Jamaal W., supra,* 543 S.E.2d at 287. If the court denies the defendant's request, its reasons must be entered on the record and supported by specific findings. *State v. Simmons,* 26 Wash.App. 917, 614 P.2d 1316, 1318 (1980); *State v. Allah Jamaal W., supra,* 543 S.E.2d at 287–88.

■ The court's ruling will be reviewed for abuse of discretion. *State v. Allah Jamaal W., supra,* 543 S.E.2d at 288; *cf. Deck v. Missouri, supra,* 544 U.S. at 629, 125 S.Ct. at 2012 (the defendant may be visibly restrained only if the trial court determines, in the exercise of its discretion, that the restraints are justified by a state interest specific to a particular trial). Reversal is required only if the defendant can demonstrate prejudice. *Jackson v. State, supra,* 698 So.2d at 1304; *cf. People v. Walters,* 796 P.2d 13, 14 (Colo.App.1990) (defendant must demonstrate prejudice from the denial of his request to have a *prosecution* witness appear in street clothes). The error will be deemed harmless if, under the totality of circumstances, it did not substantially influence the verdict or impair the fairness of the trial. *Medina v. People,* 114 P.3d 845, 857 (Colo. 2005).

### B. Discussion

Defense counsel informed the court that she had brought street clothes for two defense witnesses who were in custody. One witness was serving time on work release following a conviction for theft, and the other was serving twenty days for failing to complete alcohol classes following a conviction for driving under the influence. Counsel asked the court to allow these witnesses to appear in street clothes and leg braces (which would have been hidden from view), instead of jail clothes, shackles, and handcuffs.

Lacking the benefit of published Colorado authority, the court denied Knight's request without expressly considering whether each witness would likely jeopardize security, try to escape, or otherwise disrupt the trial. Because the court did not recognize the potential prejudice to Knight or justify its decision by reference to the specific risks posed by

each witness, its ruling was an abuse of discretion.

■ However, we conclude that this error was harmless because each witness's testimony was brief and unimportant. One witness testified that the victim's girlfriend was "dishonest [about] certain things." The other witness merely corroborated that Knight had been driving the stolen car. Had the court granted Knight's request—thus removing the witnesses' appearance as a reason for doubting their credibility—the outcome would have been the same.

## VI. Other Evidentiary Rulings

Knight challenges various other evidentiary rulings. We address and reject each contention as follows.

■ Trial courts have considerable discretion over the admissibility of evidence and the determination of its relevancy, probative value, and prejudicial impact. To constitute an abuse of discretion, the trial court's evidentiary ruling must be manifestly arbitrary, unreasonable, or unfair. *People v. White*, 55 P.3d 220, 223 (Colo.App.2002).

### A. Undisclosed Testimony

■ At trial, the prosecution introduced the testimony of a police officer who had responded to the scene of the shooting. This officer testified that she saw the victim "who appeared to be deceased … twitch." Defense counsel objected on the ground that this statement had not been disclosed before trial. The court overruled the objection.

We perceive no abuse of discretion. The prosecution fulfilled its discovery obligations by providing notice that the officer would testify and by providing the officer's written report. *See* Crim. P. 16(I)(a)(1). The prosecution was not required to reduce the officer's oral statement to writing or furnish the substance of her anticipated testimony. *See People v. Garcia*, 627 P.2d 255, 258–59 (Colo. App.1980). Because the officer's statement was not exculpatory, disclosure was not required under Crim. P. 16(I)(a)(2).

### B. Videotaped Interview

■ Knight contends that the trial court erroneously admitted portions of a videotaped interview that the victim's girlfriend gave to police. We find no abuse of discretion.

If a party introduces part of a written or recorded statement, CRE 106 allows the opposing party to introduce any other part of the recording that in fairness should also be considered. *People v. Medina*, 72 P.3d 405, 410 (Colo.App.2003). The purpose of CRE 106 is to avoid misleading the jury by taking evidence out of context or creating a distorted picture by the selective introduction of evidence. *People v. Medina, supra* (citing *Merrick v. Mercantile–Safe Deposit & Trust Co.*, 855 F.2d 1095 (4th Cir.1988)).

Here, Knight asked the court to admit a portion of the videotaped interview to show that the girlfriend's testimony was inconsistent with statements that she made to police. The trial court ruled that another part of the tape—a two-minute segment showing the girlfriend crying and talking to herself—was admissible to provide context.

The court's ruling was within the bounds of its discretion. By observing the girlfriend's emotional state, the jury could better assess the significance of any inconsistency between her videotaped statements and trial testimony.

### C. Rebuttal Evidence

■ The defense called a witness who played a significant role in the events that led to the confrontation between Knight and the victim. During the cross-examination of this witness, the prosecution was allowed to elicit the following information:

1. Several months before the homicide, the victim punched the witness in the face. The witness did not call the police because he intended to handle the situation himself.

2. About two weeks before the homicide, the witness was shot in the leg during an unrelated incident. The witness did not call the police when this happened. The witness was not present at the

scene of the homicide because he was home recovering from his injury.

3. The witness was a member of Knight's group, "Montbello's Finest." The group would "sometimes" take care of problems by fighting.

Knight contends that the trial court abused its discretion in allowing the prosecution to elicit evidence that the witness had been shot. We disagree.

The information was not highly prejudicial, and it tended to show that members of Montbello's Finest were inclined to resolve confrontations by violence. This was relevant to rebut Knight's evidence—elicited through the testimony of several witnesses—that Montbello's Finest were athletes and were not involved in violence. *See People v. Rowerdink,* 756 P.2d 986, 994 (Colo.1988) (a party may introduce evidence that explains, refutes, counteracts, or disproves evidence put on by the other party).

## VII. Jury Instruction on Self–Defense

■ Knight contends that the court failed to instruct the jury that the prosecution must disprove self-defense beyond a reasonable doubt. We reject this contention.

■ Because Knight did not object to the jury instruction at trial, we apply plain error standards. We review only to determine whether the omission was an obvious and substantial error that so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the verdict. *People v. Miller,* 113 P.3d 743, 745, 750 (Colo. 2005).

The trial court gave the following self-defense instruction:

INSTRUCTION NO. *16*

It is an affirmative defense to the crimes of Murder in the First Degree and Murder in the Second Degree that the defendant used deadly physical force because: (1) he reasonably believed a lesser degree of force was inadequate, and (2)[he] had reasonable grounds to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving great bodily injury.

The court also informed the jury of the elements of first and second degree murder. The court's instructions required, as an element of each offense, that defendant committed the crime "without the affirmative defense in instruction No. 16." The court further instructed the jury that it should render a verdict of not guilty if the prosecution failed to prove any element beyond a reasonable doubt.

Read in their entirety, the court's instructions effectively communicated that the prosecution was required to disprove self-defense beyond a reasonable doubt. And this principle was reinforced by defense counsel, who made the following comments during closing argument: "If the prosecution has failed to prove that [Knight] wasn't acting in self-defense, they don't have first [degree murder], they don't have second [degree murder]. They have to prove beyond a reasonable doubt ... that he wasn't defending himself."

We therefore find no error, let alone plain error.

## VIII. Prosecution's Closing Argument

■ Knight contends that the trial court erred by allowing the prosecutor to make improper comments during closing argument. We disagree.

■ A claim of improper closing argument is evaluated in the context of the argument as a whole and in light of the evidence presented at trial. Errors in argument that do not substantially influence the verdict or affect the fairness of the proceedings are harmless. *People v. Griffith,* 58 P.3d 1111, 1113 (Colo.App.2002).

During closing argument, the prosecutor stated, "Montbello's Finest ... were ... running around with pistols, running around getting shot, doing time in jail. You know, that's what you saw with a big part of Montbello's Finest." Defense counsel objected, and the court sustained the objection. The prosecutor then stated, "[A defense witness] was shot. He told you about that. . . . Two of the guys from Montbello's Finest came here in chains." Defense counsel again objected, and the court sustained the objection.

We conclude that the improper statements were harmless. The statements constituted a small part of a lengthy closing argument, during which the prosecutor fairly summarized the evidence presented and told the jurors that it was their duty to make an independent determination of the facts. Because the court sustained the objections, the improper remarks were unlikely to have influenced the jury's verdict. *See People v. Fernandez*, 883 P.2d 491, 494–95 (Colo.App. 1994).

We conclude that the trial court properly overruled defense counsel's other objections. And we conclude that the remaining comments, to which defense counsel did not object, did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the verdict. *See People v. Miller, supra*, 113 P.3d at 745, 750.

### IX. Cumulative Error

Because the alleged errors of which Knight complains did not, singly or cumulatively, deprive him of a fair trial, he is not entitled to reversal on a theory of cumulative error. *See People v. Roy*, 723 P.2d 1345 (Colo.1986).

The judgment is affirmed.

Judge MÁRQUEZ and Judge VOGT concur.