23CA1493 Peo in Interest of DRM 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1493
Larimer County District Court Nos. 23JD54 & 23JD74
Honorable Cara M. Boxberger, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of D.R.M.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Petitioner-Appellee

The Juba Law Office, PLLC, Madison R. Whitley, Denver, Colorado, for Juvenile-Appellant

¶ 1     D.R.M. appeals his adjudications of delinquency in Larimer County Case Nos. 23JD54 and 23JD74.  He contends that the juvenile court erred by (1) granting the prosecution's motion to join the two cases; (2) denying his motion to suppress certain statements he made; and (3) denying his motion to suppress evidence obtained from a search of his backpack following his arrest for an unrelated incident.  We affirm.

## I.     Background

¶ 2     The People charged D.R.M. in two separate cases.  In Case No. 23JD54, the People charged D.R.M. for conduct that, if committed by an adult, would constitute misdemeanor criminal mischief under section 18-4-501(1), (4)(c), C.R.S. 2024, for graffitiing Centennial High School in Fort Collins.  In Case No. 23JD74, the People charged D.R.M. for conduct that, if committed by an adult, would constitute felony criminal mischief under section 18-4-501(1), (4)(d), for graffitiing parts of Old Town Fort Collins and misdemeanor

criminal mischief under 18-4-501(1), (4)(a),[1] for graffitiing various locations around Colorado State University (CSU). On the prosecution's motion, and after a hearing, the juvenile court joined the two cases for trial.

¶ 3 After a two-day bench trial, the court found D.R.M. (1) guilty of misdemeanor criminal mischief for the graffiti at Centennial High School; (2) guilty of the lesser included petty offense of criminal mischief for the graffiti in Old Town; and (3) not guilty of any offense with respect to the graffiti at CSU. The court imposed concurrent forty-five-day sentences for each conviction and found that D.R.M. was entitled to forty-five days of presentence confinement credit.

## II. Joinder

¶ 4 D.R.M. contends that the juvenile court erred by joining Case Nos. 23JD54 and 23JD74 for trial. We disagree.

---

[1] For this conduct, the People originally charged D.R.M. with one count of misdemeanor criminal mischief under section 18-4-501(1), (4)(b), C.R.S. 2024, but at the conclusion of trial, the prosecution moved for, and the court granted, an amendment of the charge to cite section 18-4-501(1), (4)(a).

## A. Applicable Law and Standard of Review

¶ 5 Unless consolidation would result in prejudice within the meaning of Crim. P. 14, a trial court may order two or more criminal complaints to be tried together if the offenses could have been joined in a single complaint under Crim. P. 8(a)(2). Crim. P. 13; *Buell v. People*, 2019 CO 27, ¶ 13; *People v. Gregg*, 298 P.3d 983, 985 (Colo. App. 2011). Rule 8(a)(2) allows for permissive joinder of two or more offenses that "are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." And Rule 14 provides, in relevant part, that "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . . for trial together, the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires."

¶ 6 We review a trial court's decision to consolidate charges under Crim. P. 13 for an abuse of discretion. *Buell*, ¶ 14. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *People in Interest of E.R.*, 2018 COA 58, ¶ 6. "Reversal on the basis of the consolidation of offenses is not justified unless the defendant demonstrates actual

prejudice as a result of the [trier of fact's] inability to separate the facts and legal theories applicable to each offense." *Gregg*, 298 P.3d at 985-86; *see also People v. Knight*, 167 P.3d 147, 151 (Colo. App. 2006). A defendant cannot show actual prejudice if the evidence of each offense would have been admissible in separate trials, for instance, under CRE 404(b). *Buell*, ¶¶ 31-33; *Gregg*, 298 P.3d at 986.

## B. Additional Background

¶ 7    Before the trial, the prosecution moved to join Case Nos. 23JD54 and 23JD74 arguing that joinder was appropriate under Crim. P. 13 and Crim. P. 8(a)(2) because the offenses were of the same or similar character or constituted parts of a common plan or scheme. With regard to Case No. 23JD54, the prosecution explained that surveillance footage showed two individuals, later identified as D.R.M. and L.F., graffitiing several buildings at Centennial High School in the early morning hours of February 7, 2023. The graffiti was created in black marker or black paint pen and had "distinctive characteristics," such as bubbly or stylized letters along with repeated unique combinations of letters. The prosecution also argued that "[t]he lack of any apparent pattern or

4

message in the graffiti [wa]s, in itself, a discernable pattern." When officers contacted D.R.M. at his home later that day, he admitted to writing the graffiti and was wearing clothes similar to those worn by one of the suspects in the surveillance footage.

¶ 8 With regard to 23JD74, the prosecution explained that between March 14 and 18, 2023, CSU employees discovered several places on campus that had been defaced with yellow and blue spray paint. Between March 19 and 21, surveillance footage showed an individual graffitiing various locations around Old Town. The graffiti in Old Town was primarily written in hot pink spray paint, but some parts featured yellow or blue spray paint and black paint or marker. The prosecution argued that "the similarity of the writing, the distinctive characteristics of certain letters, the repeated letter combinations[,] . . . and the lack of any cohesive message" allowed the police to connect D.R.M. to the CSU and Old Town graffiti incidents.

¶ 9 On March 21, police officers arrested D.R.M. in an unrelated incident and found two cans of hot pink spray paint in his backpack. One of the arresting officers viewed the surveillance footage of the graffiti suspect in Old Town from earlier that day and

noted that, when D.R.M. was arrested, he was wearing the same clothing as the individual in the video. The officer also learned that D.R.M. was under investigation for graffitiing Centennial High School and "found unmistakable similarities in the style of the graffiti" among the CSU, Old Town, and Centennial High School incidents.

¶ 10 The prosecution argued that the cases were so closely related in time and nature that it could dismiss Case No. 23JD54 and refile the same charges into Case No. 23JD74. The prosecution also argued that a single trial would be a more efficient use of judicial resources. Lastly, the prosecution argued that the evidence from Case No. 23JD54 would be cross-admissible in Case No. 23JD74 under CRE 404(b) to prove identity, show a common scheme or plan, or establish that D.R.M. knowingly committed the offenses charged.

¶ 11 After a motions hearing, the court determined that joinder under Crim. P. 8(a)(2) was appropriate because the offenses were of the same or similar character, based on two or more acts or transactions connected together, or constituted parts of a common scheme or plan. Relying heavily on the prosecution's motion, the

court determined that evidence from Case No. 23JD54 could be admitted in Case No. 23JD74 under CRE 404(b). Thus, the court granted the prosecution's motion to join the two cases.[2]

C. The Juvenile Court Did Not Err by Joining the Two Cases

¶ 12 D.R.M. contends that the juvenile court erred by joining Case Nos. 23JD54 and 23JD74 because (1) the offenses were not the same or similar in character, connected together, or related parts of a common plan or scheme; and (2) even if joinder was proper, the consolidation resulted in prejudice. We are not persuaded.

1. Similarity

¶ 13 D.R.M. contends that the juvenile court erred by joining the two cases because the charged crimes were not similar enough. He points out that the graffiti locations were different, the perpetrator used different tools in each location (colored spray paint versus black paint or marker), and the incidents occurred more than a month apart.

---

[2] To the extent D.R.M. contends that the juvenile court could not rely on the prosecution's motion to support its decision to consolidate the cases but was required to rely only on evidence received at the motions hearing, he cites no supporting authority.

¶ 14    When assessing whether two cases are of the "same or similar character," courts consider "the elements of the offenses at issue, the temporal proximity of the underlying acts, the likelihood that the evidence will overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims." *Bondsteel v. People*, 2019 CO 26, ¶ 38.  A court may also join "offenses committed at different times and places but constituting part of a schematic whole." *People v. Kendall*, 174 P.3d 791, 795 (Colo. App. 2007).

¶ 15    Here, D.R.M. admitted to graffitiing Centennial High School on February 7.  The Old Town and CSU graffiti incidents (1) occurred within six weeks; (2) occurred in the same general area in Fort Collins; (3) involved graffiti with unique letter combinations and distinctive styling similar to the Centennial High School graffiti; and (4) used pink spray paint, yellow and blue spray paint, and/or black marker or paint.  Based on this evidence, we perceive no abuse of discretion in the juvenile court's conclusion that the offenses were of the same or similar character or constituted part of a common scheme or plan.  *See* Crim. P. 8(a)(2); *Bondsteel*, ¶ 40 (the trial court did not reversibly err by joining two cases when the

offenses all involved assaults of women threatened with a weapon in isolated open-air spaces that occurred within a six-month period and involved an assailant who attempted to remove the women's clothing); *Gregg*, 298 P.3d at 986 (affirming consolidation of three robbery cases that occurred within months of each other and involved handwritten death threats and a robber who kept his hand in his jacket pocket or carried a bag he said contained dynamite).

### 2.    Prejudice

¶ 16    D.R.M. also contends that the juvenile court erred because even if joinder was proper under Crim. P. 8(a)(2), it was still prejudicial under Crim. P. 14.  But D.R.M. fails to demonstrate actual prejudice because (1) evidence of each incident would have been cross-admissible in separate trials; and (2) he has not shown that the court, as the trier of fact, was unable to separate the facts and legal principles of each offense.  *See Washington v. People*, 2024 CO 26, ¶ 37 ("The defendant bears the burden of demonstrating (1) 'actual prejudice' caused by the joinder and (2) 'that the trier of fact was unable to separate the facts and legal principles applicable to each offense.'" (quoting *Bondsteel*, ¶ 59)); *Buell*, ¶¶ 31-33; *Gregg*, 298 P.3d at 986.

¶ 17 Under CRE 404(b), evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character" but may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Still, admissibility of other act evidence must be analyzed under the four-part test set forth in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). Under *Spoto*, other act evidence is admissible if (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the prohibited intermediate inference that the defendant was acting in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.*

¶ 18 We review a trial court's ruling on the admissibility of evidence under CRE 404(b) for an abuse of discretion. *Bondsteel*, ¶ 45. In deference to the district court's decision to admit the evidence, we assume its maximum probative value and its minimum unfair prejudice. *Yusem v. People*, 210 P.3d 458, 467 (Colo. 2009).

10

¶ 19    The evidence that would have been presented in a separate trial in Case No. 23JD54 primarily consisted of body camera footage of D.R.M. admitting that he graffitied Centennial High School, surveillance footage of the perpetrator wearing a hoodie and dark jacket, and photographs of the distinctive graffiti created with black marker.  This evidence would have made it more likely that D.R.M. was the person who committed the offenses charged in 23JD74.  D.R.M. admitted he graffitied Centennial High School.  The perpetrator shown in the surveillance video, who was graffitiing Old Town on March 21, wore a hoodie and dark jacket similar to what D.R.M. was wearing in the Centennial High School surveillance video.  And there were similarities in the graffiti style and tools used at Centennial High School compared to those used at Old Town and CSU.

¶ 20    The prosecution offered this evidence in Case No. 23JD74 to establish identity, a common plan or scheme, and knowledge.  The juvenile court found by a preponderance of the evidence that the incident charged in Case No. 23JD54 occurred and demonstrated a common plan or scheme between the two cases.  The court also determined that the evidence was logically relevant to a material

11

issue, independent of character, and that its prejudicial effect did not substantially outweigh its probative value.

¶ 21　　D.R.M. argues that the evidence was unfairly prejudicial only because the "logical inference when taking these incidents into account is that [D.R.M.] has a penchant for committing vandalism." But *Spoto* does not require the *absence* of the prohibited character inference; it requires only that the evidence is offered for a proper purpose that is *independent* of that inference. *People v. Jones*, 2013 CO 59, ¶ 16. And the purposes for which the evidence was offered and admitted — identity and common scheme or plan — are appropriate non-propensity purposes. *See* CRE 404(b)(2). D.R.M. does not otherwise explain why the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter . . . ." (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979))); *People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002) ("[U]nfair prejudice within the meaning of the rule still refers only to 'an undue tendency on the part of admissible evidence to

12

suggest a decision made on an improper basis' and does not mean prejudice that results from the legitimate probative force of the evidence." (quoting *People v. Gibbens*, 905 P.2d 604, 608 (Colo. 1995))).

¶ 22    In addition, the juvenile court was clearly able to separate the facts and legal principles of each offense. *See Gregg*, 298 P.3d at 985-86; *Knight*, 167 P.3d at 151. The court found D.R.M. guilty as charged in Case No. 23JD54, primarily because D.R.M. admitted to graffitiing Centennial High School. But in Case No. 23JD74, the court found D.R.M. guilty of only a lesser included offense related to Old Town and not guilty of the offense related to CSU. It explained that the person seen in the surveillance footage graffitiing a concrete bench in Old Town was wearing the same clothes as D.R.M. when he was arrested for a separate incident, so it found beyond a reasonable doubt that D.R.M. was responsible for that damage. But it rejected the balance of the charges in large part because it found the similarities between the graffiti "not . . . nearly as clear as argued by the People."

¶ 23    For these reasons, we conclude that D.R.M. has failed to show actual prejudice stemming from the consolidation. *See Buell*,

13

¶¶ 31-33; *Gregg*, 298 P.3d at 986.  Thus, we conclude that the juvenile court did not abuse its discretion by consolidating the two cases.

### III.  Motions to Suppress

¶ 24    D.R.M. contends that the juvenile court erred by denying his pretrial motions to suppress statements and evidence.  We discern no error.

### A.    Standard of Review

¶ 25    "A trial court's suppression order presents a mixed question of law and fact."  *People v. N.A.S.*, 2014 CO 65, ¶ 5 (quoting *People v. McIntyre*, 2014 CO 39, ¶ 13).  We defer to the court's historical findings of fact if they are supported by competent record evidence, but we review the legal effect of those facts de novo.  *Id.*

### B.    Motion to Suppress Statements

¶ 26    D.R.M. contends that the court erred by denying his pretrial motion to suppress statements he made during police contact because they (1) were made while he was in custody without a parent or guardian present in violation of the Children's Code, section 19-2.5-203(1), C.R.S. 2024; and (2) were involuntary.  We disagree.

### 1.    Applicable Law

¶ 27    It is fundamental that a suspect's statements during a custodial interrogation are inadmissible unless (1) they are voluntary; (2) police provide *Miranda* warnings; and (3) the suspect validly waives their *Miranda* rights.  *N.A.S.*, ¶ 6 (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  For juveniles, the Children's Code adds an additional layer of protection.  Under section 19-2.5-203(1), any "statement or admission of a juvenile made as a result of the custodial interrogation of the juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile are not admissible in evidence against the juvenile," unless a parent or guardian is present and informed of the juvenile's *Miranda* rights, and those rights are validly waived. *See People v. Lehmkuhl*, 117 P.3d 98, 102 (Colo. App. 2004) (analyzing section 19-2-511, C.R.S. 2004 (repealed and relocated to section 19-2.5-203, effective Oct. 1, 2021), which is substantially similar to the current statute).

¶ 28    However, neither *Miranda* nor the "special statutory protections" of the Children's Code apply if the juvenile is not in custody and being interrogated.  *People v. Howard*, 92 P.3d 445,

15

449 (Colo. 2004); *see* § 19-2.5-203(1). Thus, any statements a juvenile makes out of custody are admissible so long as they are voluntary. *Howard*, 92 P.3d at 449.

### 2. Additional Background

¶ 29 Before trial, D.R.M. filed a motion to suppress statements he made when contacted by Corporals Weis and Sargent, arguing that the statements were (1) taken without a parent present during a custodial interrogation, in violation of section 19-2.5-203; and (2) given involuntarily. The court reviewed Corporal Weis' body camera footage, which had captured the interaction. And it held a hearing at which Corporal Weis testified.

¶ 30 The evidence established that, on February 7, Corporals Weis and Sargent contacted D.R.M. at his home in an apartment building. Both officers were dressed in uniform and carried holstered weapons. When D.R.M. answered the door to a vestibule outside his apartment, Corporal Weis first introduced himself and Corporal Sargent as officers working with the school resource office. Corporal Weis shook D.R.M.'s hand, while Corporal Sargent fist-bumped D.R.M.

¶ 31    As the juvenile court found, the officers "stayed a distance away" from D.R.M.  Corporal Weis then told D.R.M. that they were there to discuss a tagging incident at Centennial High School and that D.R.M.'s name had "come up."  They told D.R.M. they were trying to gather information about what happened.  D.R.M. initially responded, "No comment right now," but then immediately said that he had been walking around the school the night before.

¶ 32    D.R.M. stepped outside to let another resident leave the complex and stood next to the side of the apartment building on the sidewalk while continuing the conversation with the officers.  Corporal Weis said that he knew D.R.M. was with L.F. at the school and that the security cameras had captured clear footage of the incident.  Corporal Weis explained that some of the writing "freaked out the staff."  D.R.M. responded, "We have different handwriting."  Corporal Weis then asked D.R.M. if he was "over there at all," and D.R.M. admitted that he graffitied a door but said he only wrote positive messages.

¶ 33    Corporal Weis asked D.R.M. how old he was, and when D.R.M. responded that he was seventeen, the Corporal asked D.R.M. to get his father.  D.R.M. went inside the apartment building, closed the

17

door behind him, and then opened the door again a few moments later to let officers know that his father did not want to speak with them. Corporal Weis let D.R.M. know he would likely be charged for writing on the side of a school building, to which D.R.M. responded, "That's fair." Corporal Weis again asked to speak with D.R.M.'s father. Eventually, D.R.M.'s father spoke to the officers.

¶ 34 The juvenile court found that the entire interaction lasted about ten minutes; there was no restraint placed on D.R.M.; each participant's tone was conversational; some of D.R.M.'s statements were unsolicited; D.R.M.'s movement was not limited in any way; and D.R.M. moved freely between the foyer, his apartment, and outside the building. The court determined that D.R.M. was not in custody when he made the statements, so section 19-2.5-203 did not apply. The court also determined that D.R.M.'s statements were voluntary. Consequently, the court denied the motion to suppress.

### 3. D.R.M. Was Not in Custody

¶ 35 D.R.M. contends that the juvenile court erred by concluding that he was not in custody because the court failed to consider his

age when evaluating whether a reasonable person in D.R.M.'s position would have felt free to leave. We disagree.

¶ 36 To determine if a defendant was in custody, a court must analyze whether "a reasonable person in the [suspect's] position would consider himself to be deprived of his freedom of action *to the degree associated with a formal arrest*," based on the totality of the circumstances. *N.A.S.*, ¶ 8 (alteration and emphasis in original) (quoting *People v. Begay*, 2014 CO 41, ¶ 13). We examine the following nonexhaustive factors:

> 1. the time, place, and purpose of the encounter;
>
> 2. the persons present during the interrogation;
>
> 3. the words spoken by the officer to the defendant;
>
> 4. the officer's tone of voice and general demeanor;
>
> 5. the length and mood of the interrogation;
>
> 6. whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation;
>
> 7. the officer's response to any questions asked by the defendant;

19

8. whether directions were given to the defendant during the interrogation; and

9. the defendant's verbal or nonverbal response to such directions.

*Id.* (quoting *Begay*, ¶ 17). In the juvenile context, courts must also consider the juvenile's age. *Id.* at ¶ 9.

¶ 37  Our independent review of Corporal Weis' bodycam footage aligns with the juvenile court's findings and its conclusion that D.R.M. was not in custody. *See People v. Kutlak*, 2016 CO 1, ¶ 13 (A reviewing court "may undertake an independent review of the audio or video recording to determine whether the statements were properly suppressed in light of the controlling law" when the facts in the recording are undisputed.). True, Corporals Weis and Sargent were in full uniform with holstered weapons when they contacted D.R.M., and they told D.R.M. that they were investigating instances of graffiti that could result in charges. But those facts, standing alone, are insufficient to support a determination that D.R.M. was in custody. On the contrary, under the totality of the circumstances, a reasonable person in D.R.M.'s position would not consider himself to be deprived of his freedom of action to the degree associated with a formal arrest. *See N.A.S.,* ¶ 8.

20

¶ 38    We recognize that the court did not explicitly say how D.R.M.'s age factored into its determination that he was not in custody. *See id.* at ¶ 9. But this is a juvenile case, and D.R.M.'s age at the time of the encounter — seventeen — is undisputed. Because we review de novo the legal effect of the facts on the custody determination, *see id.* at ¶ 5, we can independently consider whether D.R.M.'s age undermines the juvenile court's custody determination. We conclude it does not.

¶ 39    Juveniles who lack age and experience may feel intimidated when confronted by police officers, but "a juvenile's fear and ignorance as to [their] ability to cease the questioning and leave" does not necessarily lead to a finding that they were in custody. *People in Interest of J.C.*, 844 P.2d 1185, 1190 (Colo. 1993). The juvenile's age is not dispositive; "rather, courts should weigh it alongside other relevant factors to ascertain whether the juvenile was in custody." *N.A.S.*, ¶ 9.

¶ 40    D.R.M. was seventeen — about fifty-six days away from his eighteenth birthday — when he spoke to Corporals Weis and Sargent. He spoke candidly with the officers. He did not seem confused, intimidated, or scared. And he moved freely in and out of

21

his home.  In short, nothing about the contact between D.R.M. and the officers suggests that D.R.M. believed he was under arrest. Accordingly, we discern no error in the court's determinations that D.R.M. was not in custody or that section 19-2.5-203 did not preclude admission of his statements.  *See id.* at ¶ 14.

### 4.  D.R.M.'s Statements Were Voluntary

¶ 41  D.R.M. also contends that the juvenile court erred by admitting his statements because they were involuntary.  Again, we are not persuaded.

¶ 42  To determine whether a statement is voluntary, a court must decide "whether, under the totality of the circumstances, the behavior of the official was coercive so as to overbear the defendant's will in making the statements."  *People v. Zadran*, 2013 CO 69M, ¶ 10.  The only specific argument D.R.M. makes regarding voluntariness is that the officers did not give him a *Miranda* warning, and he did not waive his *Miranda* rights.  But an officer's failure to give a *Miranda* warning is only one factor a court analyzes when determining voluntariness, and "such a violation does not per se render a statement involuntary."  *N.A.S.*, ¶ 17.  D.R.M. does not identify anything else about the circumstances that would suggest

22

coercion. *See id.* at ¶ 19 (identifying the nonexhaustive factors a court considers in determining whether police conduct was coercive). Considering the totality of the circumstances, we conclude that D.R.M.'s statements were voluntary. *See id.* As a result, we conclude that the juvenile court did not err by denying D.R.M.'s motion to suppress.

### C. Motion to Suppress Evidence from the Search Incident to Arrest

¶ 43　D.R.M. next contends that the juvenile court erred by denying his motion to suppress evidence obtained during a search incident to his arrest for an unrelated offense because police lacked a reasonable suspicion justifying their investigatory stop,[3] and the court failed to make an initial finding that the seizure of D.R.M was lawful. We perceive no error.

### 1. Applicable Law

¶ 44　The Fourth Amendment of the United States Constitution and article II, section 7, of the Colorado Constitution prohibit

---

[3] Although police arrested him, D.R.M. does not contend that police lacked probable cause to do so. Instead, he argues that police lacked a reasonable articulable suspicion to conduct an investigatory stop. *See People v. Dacus*, 2024 CO 51, ¶ 26. Because D.R.M. focuses on reasonable suspicion, we do too.

23

unreasonable searches and seizures. *People v. Allen*, 2019 CO 88, ¶ 15. "[I]nvestigatory stops are seizures that implicate Fourth Amendment protections." *People v. Dacus*, 2024 CO 51, ¶ 26. Although an officer must have probable cause to arrest a suspect, an investigatory stop is "justified when the police have 'a reasonable articulable suspicion that the defendant is involved in criminal activity.'" *Id.* (quoting *People v. Martinez*, 200 P.3d 1053, 1057 (Colo. 2009)). Reasonable suspicion is a "less demanding standard" than probable cause "in the sense that it can be established with information that is different in quantity or content . . . but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *People v. Polander*, 41 P.3d 698, 703 (Colo. 2001).

### 2. Additional Background

¶ 45 Before trial, D.R.M. filed a motion to suppress evidence obtained from a search of his backpack incident to his arrest for an unrelated incident. D.R.M. argued that his seizure was unlawful and therefore all evidence obtained as a result should be suppressed.

¶ 46    The juvenile court held a hearing to address the motion.  Two arresting officers testified.  Officer Brittingham testified that he responded to a report of a burglary in progress.  The reporting party said that his son was attempting to break into his residence.  The officer also had information about an assault that had occurred at the residence the night before.  Officer Brittingham arrived at the scene, saw D.R.M., and told him to stop.  When D.R.M. attempted to flee on his bike, the officer forcibly pushed him off and immediately placed him in custody.  D.R.M. told officers that he had two weapons — a machete and a gun — on his person.  Officer Menn testified that he searched the backpack that D.R.M. had been wearing and found two cans of pink spray paint.

¶ 47    The court found that D.R.M. was wearing the backpack when he was arrested and had admitted to carrying weapons.  The court determined that the search of the backpack was incident to D.R.M.'s arrest and that D.R.M. had lost any expectation of privacy for the backpack when he was arrested.  Defense counsel did not object to the court's failure to make an initial determination that the seizure of D.R.M. was lawful or otherwise ask the court to make that determination.

### 3. Preservation

¶ 48    The People argue that D.R.M. waived or abandoned the right to challenge the juvenile court's failure to rule on the lawfulness of D.R.M.'s seizure by failing to obtain a ruling on the issue. Alternatively, the People contend that D.R.M.'s contention is forfeited and subject to plain error review.

¶ 49    "[W]aiver" is "the intentional relinquishment of a known right or privilege." *People v. Smith*, 2024 CO 3, ¶ 18 (quoting *People v. Rediger*, 2018 CO 32, ¶ 39). "Abandonment, in contrast, typically arises from a party's decision not to pursue or reassert a claim that the party had raised previously." *Id.* Forfeiture is "the failure to make the timely assertion of a right." *Rediger*, ¶ 40 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "[A] waiver extinguishes error" and precludes appellate review, while a forfeiture subjects the error to plain error review. *Id.* Thus, we indulge every reasonable presumption against waiver. *Phillips v. People*, 2019 CO 72, ¶ 21; *People v. Stanley*, 56 P.3d 1241, 1244 (Colo. App. 2002).

¶ 50    Although D.R.M. argued in his motion to suppress that his seizure was unlawful, defense counsel failed to obtain a ruling on that issue at the motions hearing. Instead, counsel expressly

26

limited her argument to a portion of that motion that is not before us — seeking to suppress statements D.R.M. made during the arrest. When the court asked the parties if they had any argument, defense counsel responded, "I'm gonna limit my argument to the statements, themselves."

¶ 51    Even if we give D.R.M. the benefit of the doubt and conclude that defense counsel did not affirmatively waive or abandon this claim, defense counsel's failure to secure a ruling constitutes a forfeiture and subjects his contention to plain error review. *See Rediger*, ¶ 40 (defining forfeiture as "the failure to make the timely assertion of a right" (quoting *Olano*, 507 U.S. at 733)); *People v. Douglas*, 2015 COA 155, ¶ 40 (A failure to request a ruling on an objection "amounts either to no objection at all, or, worse still, to an abandonment of the objection and a waiver of any right to assert error on appeal."). Plain error is error that is both obvious and substantial such that it "undermine[s] the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 748-50 (Colo. 2005)).

### 4. The Juvenile Court Did Not Reversibly Err by Denying D.R.M.'s Motion to Suppress the Evidence

¶ 52    D.R.M. contends that the officers' testimony failed to establish they had a reasonable articulable suspicion that he was involved in criminal activity to justify an investigatory stop. *See Dacus*, ¶ 26. We disagree.

¶ 53    "[A]n investigatory stop, based in part on a tip provided by someone other than the police, is justified 'as long as the totality of the circumstances indicates that the police possess some minimal level of objective suspicion . . . that the person to be stopped is committing, has committed, or is about to commit a crime.'" *Id.* at ¶ 28 (quoting *Polander*, 41 P.3d at 703). Considering the totality of the circumstances — including the report of a burglary by a son and Officer Brittingham's observations of D.R.M. fleeing the scene — we conclude that the officer had "some minimal level of objective suspicion" that D.R.M. was the person who had committed the burglary. *Id.* (quoting *Polander*, 41 P.3d at 703).

¶ 54    Even if we assumed that the juvenile court erred by failing to address the lawfulness of the seizure before denying D.R.M.'s motion to suppress, D.R.M. has not explained how the evidence

obtained during the search incident to his arrest — the pink spray paint — prejudiced him at trial. Notably, the juvenile court found that the prosecution *failed to prove* that D.R.M. was guilty of any of the offenses involving pink spray paint. The only charges the court found the prosecution had proven beyond a reasonable doubt involved black marker or paint.

¶ 55 Accordingly, we conclude that D.R.M. has failed to establish that (1) the officers lacked reasonable suspicion, or (2) the court's alleged error and the resultant admission of the pink spray paint evidence "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (quoting *Miller*, 113 P.3d at 750).

## IV. Disposition

¶ 56 We affirm the judgment.

JUDGE J. JONES and JUDGE YUN concur.

29